[Crim. No. 9690. Fourth Dist., Div. Two. Nov. 6, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM THOMAS SARGENT, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Jonathan B. Steiner, Ellen L. Fondiler, Allison B. Stein, Joseph Levine and Richard E. Ross, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—In this case we hold that a victim of a forcible rape who becomes pregnant as a result of that rape suffers great bodily injury.

Defendant was convicted of forcible rape and first degree burglary. An allegation that he was armed with a deadly weapon was found to be true as was an allegation that he inflicted great bodily injury on another. On his plea of not guilty by reason of insanity, he was found sane.

Seventeen-year-old Teresa, a virgin, was in bed in her home. Her parents were on vacation. Defendant, a neighbor, (whose son Teresa had dated) entered the house through a window. At knifepoint, he orally copulated Teresa twice, forced her to kiss his penis and forcibly raped her. Prior to any of this Teresa had told the defendant she was a virgin. When he left, she called her pastor who, in turn, called the police. She was taken to a hospital where a doctor found scratches on her neck plus excoriation and inflammation of the vaginal area of a degree which could not be called minor. He also found motile sperm in her vagina. As a result of the rape she became pregnant and eventually suffered an abortion.

The defendant offered no affirmative defense at the guilt phase. Conflicting evidence was presented at the sanity phase. No attack is made on the substantiality of the evidence as to either verdict.

On appeal, defendant contends:

■ (1) That the finding of great bodily injury on the burglary count must be stricken. We disagree.

The jury was instructed that forcible rape itself constituted great bodily injury. Under the compulsion of *People* v. *Caudillo,* 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], we must hold this instruction to be

erroneous. In *Caudillo,* the Supreme Court held that the act of forcible rape in and of itself does not constitute great bodily harm.

However, the giving of this erroneous instruction does not compel reversal. In view of the giving of a proper instruction (see below), we do not find it is probable that a result more favorable to the defendant would have occurred had this erroneous instruction not been given. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].) In other words, under the facts of this case, the jury was going to find great bodily injury with or without that instruction in view of a proper instruction which was given.

The court gave CALJIC No. 17.20 (1973 revision) which properly advised the jury that the term great bodily injury refers to "significant and substantial bodily injury or damage" and that "it does not refer to trivial or insignificant injury or moderate harm."

Here, the defendant clearly inflicted on his victim great bodily injury. Pregnancy resulting from rape is great bodily injury. Justice Schauer, in his dissenting opinion in *People* v. *McIlvain,* 55 Cal.App.2d 322 at page 334 [130 P.2d 131], said: "Surely pregnancy as a result of forcible rape is great bodily injury. So also is the 'outrage to the person and feelings of the female' which constitutes the essential guilt of rape." *Caudillo* clearly disapproved Justice Schauer's second sentence. However, it did not take issue with the validity of Justice Schauer's observation "as a general matter." (*Caudillo, supra,* at p. 586, fn. 20.)

*Caudillo* held that a significant or substantial physical injury must exist apart from the act of rape in order to demonstrate great bodily injury. A pregnancy resulting from a rape (and, in this case, a resulting abortion) are not injuries necessarily incidental to an act of rape. The bodily injury involved in a pregnancy (and, in this case, a resulting abortion) is significant and substantial. Pregnancy cannot be termed a trivial, insignificant matter. It amounts to significant and substantial bodily injury or damage. It involves more than the psychological and emotional distress necessarily incident to a rape which psychological or emotional distress the authors of *Caudillo* deemed not to constitute significant or substantial physical injury. Major physical changes begin to take place at the time of pregnancy. It involves a significant bodily impairment primarily affecting a woman's health and well being. It is all the more devastating when imposed on a woman by forcible rape.

Pregnancy can have one of three results—childbirth, abortion or miscarriage. Childbirth is an agonizing experience. An abortion by whatever method used constitutes a severe intrusion into a woman's body. A miscarriage speaks for itself. Just what the dimensions of a "normal" rape might be, we leave to the authors of *Caudillo*. We merely find that the facts in this case, i.e., a pregnancy followed by an abortion, clearly support a finding of great bodily injury. In other words, there is evidence of injury significantly and substantially beyond that necessarily present in the commission of rape.[1]

(2) That the defendant was deprived of his right to due process and equal protection of the law because a postindictment preliminary hearing was not required nor provided for.

This contention has been answered in *People* v. *Superior Court (Persons)*, 56 Cal.App.3d 191 [128 Cal.Rptr. 314]. We need not repeat the analysis of that case.

(3) That the court should have granted his request for two separate juries on the issue of guilt and sanity.

Penal Code section 1026 vests the trial court with discretion in this matter. We find no abuse of discretion in the court's ruling.

■ (4) That evidence of Teresa's prior virginity, her pregnancy and her abortion were improperly admitted. We do not agree.

There was no error in the admission of this evidence. It was relevant and material to the infliction of great bodily injury.

(5) That the prosecution failed to preserve certain evidence.

Relying on *People* v. *Hitch*, 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], the defendant faults the prosecution for:

(a) Failing to preserve some footprints of the defendant.

These were moisture prints observed on the dew-covered lawn outside Teresa's house and moisture prints inside the residence. It was rather

---

[1]Again, under the compulsion of *Caudillo*, we would have to find that the oral copulation of the victim by the defendant and his forcing her to kiss his penis do not constitute a substantial or significant bodily injury to the victim. (*Caudillo, supra*, p. 587.)

obviously impossible to preserve these until the date of trial or even after the sun came up. However, the defendant contends that the police should have taken pictures of them or measured them. There is no such compulsion on the police. (*People* v. *Vera,* 62 Cal.App.3d 293 [132 Cal.Rptr. 817].) We agree with trial defense counsel who said, "It isn't exactly the same as the *Hitch* case."

(b) Failing to preserve the sperm samples taken by the doctor in the emergency room.

The doctor noted the sperm. He examined it under a microscope. That is all that transpired. There was no police or prosecutorial involvement in the taking of any sperm. The doctor never ran any tests, the results of which could have been suppressed via a *Hitch* type of analysis. There was nothing to preserve.

In regard to both, the footprints and the sperm, defendant fails utterly to demonstrate how this evidence might be material or exculpatory. Actually, insofar as the sperm is concerned, in view of Teresa's pregnancy, the whole issue seems somewhat academic.

(c) Failing to preserve some possible fingerprints on the knife left in Teresa's house.

Trial counsel made no such request. We have nothing to review.

■ (6) That the court improperly applied the M'Naghten test at the sanity phase of the trial.

While that test was proper at the time of trial, the Supreme Court has now changed that rule and under *People* v. *Drew,* 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318], the defendant's position is well taken. The Attorney General contends that it is not probable a result more favorable would occur under the ALI formula adopted by the Supreme Court in *Drew.* We cannot agree in view of the psychiatrist's testimony. Therefore, under the compulsion of *Drew,* we must reverse the sanity phase of the case.

■ (7) That the court erred in placing on him the burden of proving his insanity by a preponderance of the evidence.

This is still the law in California. (*People* v. *Drew, supra,* 22 Cal.3d 333.)

The judgments of conviction of rape and burglary are affirmed. The finding that the defendant was armed with a deadly weapon is affirmed. The finding that during the perpetration of the burglary the defendant inflicted great bodily injury on another is affirmed. The judgment that the defendant was sane at the time of the commission of the offense is reversed.

McDaniel, J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 18, 1979.