**Damone D. HERON, aka Damone Dante Heron, Petitioner**

v.

**Ivan D. CLAY, Respondent.**

**Case No. CV 08–0087–ABC (RC).**

United States District Court, C.D. California, Eastern Division.

April 13, 2009.

Damone D. Heron, Jamestown, CA, pro se.

Felicity A. Senoski, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

AUDREY B. COLLINS, Chief Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magis-

trate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; (3) petitioner's request to stay these proceedings is denied; and (4) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Audrey B. Collins, Chief United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On January 27, 2005, in San Bernardino County Superior Court case no. FVA021733, a jury convicted petitioner Damone Heron, aka Damone Dante Heron, of one count of continuous sexual abuse in violation of California Penal Code ("P.C.") § 288.5(a) (count 1) and three counts of lewd act upon a child in violation of P.C. § 288(a) (counts 2–4), and, as to

count 4, the jury found petitioner personally inflicted great bodily injury within the meaning of P.C. § 12022.7(a). Clerk's Transcript ("CT") 25–29, 166–70, 172–73. On March 9, 2005, the trial court sentenced petitioner to an aggregate term of 29 years in state prison. CT 176–78; Reporter's Transcript ("RT") 342:10–343:6.

The petitioner appealed his convictions and sentence to the California Court of Appeal, CT 179, which affirmed the judgment in an unpublished opinion filed August 2, 2006, 2006 WL 2147697. Lodgment nos. 2–6. On September 8, 2006, petitioner, proceeding through counsel, filed a petition for review in the California Supreme Court, which, on October 11, 2006, denied the petition "without prejudice to any relief [petitioner] might be entitled after the United States Supreme Court determines in *Cunningham v. California* ... the effect of *Blakely v. Washington* ... and *United States v. Booker* ... on California law." Lodgment nos. 7–8.

## II

The California Court of Appeal, in affirming the judgment, made the following findings of fact:[1] Petitioner's stepdaughter, Jane Doe, was born in 1990. Doe's mother and petitioner began living together in 1993 and were married by 1996. Although Doe initially lived with a cousin, in 1996, she began living with her mother and petitioner in Gardena. Doe was six years old. At about that time, the molestations began when petitioner exposed his penis to Doe while watching a pornographic movie. Petitioner touched Doe's genital area and had her touch his penis.

In 1998, Doe briefly lived with her biological father but later returned to her mother's home. Doe's family, which now included two younger siblings, moved to Rialto. When Doe was nine years old,

petitioner began having sexual intercourse with her. While living in Rialto, petitioner had sex with Doe more than three times.

The family moved to Fontana when Doe was in the seventh grade. Petitioner continued having sexual intercourse with Doe. Doe agreed to have sex with petitioner in exchange for certain privileges, including being excused from punishment. Petitioner would release Doe from being grounded and allow her to play outside. Doe also had sex with petitioner to avoid getting a whipping. Doe remembered having sex with petitioner more than five times while living in Fontana. Doe estimated that she had sex with petitioner more than 50 times altogether.

Although the family usually lived in small apartments, the sexual encounters always occurred at the family home. They occurred even while Doe's mother or siblings were at home. Petitioner fathered a total of four children with Doe's mother. When petitioner suffered a head injury and required in-home nursing services, petitioner continued to have sex with Doe while the nurse was present in the home.

Doe's mother discovered that Doe was pregnant when she was 12 years old. Doe told her mother that a boy from school was the child's father. When the school alerted the police concerning the pregnancy, the police interviewed Doe. During the interview, Doe explained that she had sex with her boyfriend, "Brandon," at school. Later in the interview, however, Doe broke into tears and admitted that petitioner had impregnated her. Doe explained that the sexual contacts occurred about twice a week at certain times. The most recent incident occurred in January or February of 2003.

Doe had a late-term abortion. Blood taken from petitioner and the fetal tissue

---

1. Lodgment no. 2 at 3–4.

indicated a 99.99 percent probability of paternity.

## III

Effective January 2, 2008, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254 and a supporting memorandum of points and authorities ("Memo."). On May 16, 2008, respondent filed his answer, and on August 20, 2008, petitioner filed his reply.

The petitioner raises two claims:

Ground One—"The imposition of upper terms and consecutive sentences violated ... petitioner's federal constitutional rights to a jury trial and due process of law." (Memo. at 3–7); and

Ground Two—"Insufficient evidence supported the jury's finding that petitioner inflicted great bodily injury on Jane. Doe by impregnating her, and the enhancement should be stricken." (Memo. at 7–13).

The petitioner also requests a stay, which he has erroneously labeled as Ground Three to the petition. (Memo. at 13–17).

## DISCUSSION

## IV

 District courts have authority to stay habeas corpus proceedings and to hold such proceedings in abeyance while a petitioner exhausts his state court remedies, but only "where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005); *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir.), *cert. dismissed*, —— U.S. ——, 129 S.Ct. 621, 172 L.Ed.2d 473 (2008). "[S]tay and abeyance is only appropriate when the dis-

trict court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277, 125 S.Ct. at 1535; *Wooten*, 540 F.3d at 1023; *Jackson v. Roe*, 425 F.3d 654, 660–61 (9th Cir.2005). "Stays are also improper when the unexhausted claims are 'plainly meritless' or where the petitioner has engaged in 'abusive litigation tactics or intentional delay.'" *Jackson*, 425 F.3d at 661 (quoting *Rhines*, 544 U.S. at 278, 125 S.Ct. at 1535); *cf. Wooten*, 540 F.3d at 1023 ("Under *Rhines*, a district court must stay a mixed petition only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics.").

 In his habeas corpus petition, petitioner requests this Court to stay his action and hold it in abeyance while he exhausts the following new claims: (1) "trial counsel's performance fell woefully below any reasonable standard of professionalism ... [in that] Counsel failed to investigate the case"; (2) "[t]he prosecutors [sic] agents impermissibly intercepted confidential communications between [petitioner] and his attorney in violation of the Sixth Amendment"; and (3) "the trial court deprived [petitioner] of a fair trial (third-party culpability defense) by refusing to allow [petitioner] to present evidence that the great bodily injury was caused by another person. This also violated [petitioner's] Sixth Amendment right to confront his accuser." [2] Memo. at 16.

Here, petitioner has not shown good cause to stay these proceedings. *See Neville v. Dretke*, 423 F.3d 474, 479–80 (5th

2. Petitioner also identifies another purported "new" claim he would like to exhaust: "[t]here was absolutely no evidence connecting [petitioner] to the pregnancy that formed the basis for the P.C. [§ ]12022.7 great bodily injury enhancement[.]" Memo. at 16. However, this claim is part of the pending petition, and the Court addresses the merits of the claim herein.

Cir.2005) (declining to stay habeas petition when petitioner failed to show good cause). Indeed, petitioner has offered no cogent explanation for his failure to exhaust the proposed new claims, and he has made absolutely no showing of the merit of these claims.[3] *See Jackson v. Conway,* 550 F.Supp.2d 382, 384 (W.D.N.Y.2008) (Petitioner not entitled to a stay under *Rhines* when "petitioner offers no explanation for his failure to exhaust, makes no showing of merit, and there is no indication that the proposed stay is not part of a dilatory litigation tactic."). Although petitioner was clearly aware of these claims at the time he filed the pending habeas corpus petition, he has not made any attempt to exhaust these claims in the California courts either prior or subsequent to filing this action, which suggests intentional delay. *Rhines,* 544 U.S. at 278, 125 S.Ct. at 1535; *Beaty v. Schriro,* 554 F.3d 780, 785 & n. 3 (9th Cir.2009). Petitioner's lack of diligence should not be rewarded. *See Rhines,* 544 U.S. at 277, 125 S.Ct. at 1534 ("Staying a federal habeas petition frustrates [the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") ] objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition."). Therefore, the Court denies petitioner's request for a stay.

## V

■ The AEDPA "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152

---

**3.** Petitioner claims "he has not been able to file anything concerning his claims that trial counsel failed to investigate, and [the] prosecution agents intercepted confidential communications between him and his counsel" because the trial court has not provided him with a copy of his trial transcript. *See* Reply at 31–32. However, petitioner does not explain why the trial transcripts are vital to his claims of failure to investigate or interception of confidential information, or explain why he has not sought such transcripts from his appellate counsel or taken other steps to obtain the transcripts.

L.Ed.2d 914 (2002). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Williams,* 529 U.S. at 413, 120 S.Ct. at 1523; *Andrade,* 538 U.S. at 75, 123 S.Ct. at 1174. "An *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Woodford v. Visciotti,* 537 U.S. 19, 25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam) (citations omitted; emphasis in original); *Bell,* 535 U.S. at 694, 122 S.Ct. at 1850. Thus, "even if [this Court] concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson,* 532 U.S. 782, 792–93, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001); *Wiggins,* 539 U.S. at 520–21, 123 S.Ct. at 2535.

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review.[4] *Gaston v. Palmer,* 417 F.3d 1030, 1038 (9th Cir.2005), *amended by,* 447 F.3d 1165 (9th Cir.2006), *cert. denied,* 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d

706 (1991); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied,* —— U.S. ——, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, this Court will consider the reasoned opinion of the California Court of Appeal, which denied petitioner's claims on the merits. *Butler v. Curry,* 528 F.3d 624, 640 (9th Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 767, 172 L.Ed.2d 763 (2008); *Delgadillo v. Woodford,* 527 F.3d 919, 925 (9th Cir.2008).

## VI

■ In Ground One, petitioner claims he was denied his Sixth and Fourteenth Amendment rights when the trial court sentenced him to upper terms on both counts one and four and imposed consecutive sentences. Memo. at 3–7. The California Court of Appeal, in affirming petitioner's judgment, made the following relevant factual findings:

> The trial court sentenced [petitioner] to the upper term of 16 years for the continuous sexual abuse offense (count 1), a consecutive upper term of eight years for one of the lewd acts (count 4), a consecutive term of two years for one of the other lewd acts (count 2), and a consecutive term of three years for the great bodily injury enhancement in count 4. The court stayed sentence in count 3.

Lodgment no. 2 at 15. The California Court of Appeal then denied petitioner's Sixth Amendment claim, relying on the California Supreme Court's decision in *Black I.* Lodgment no. 2 at 15–16.

---

4. The California Supreme Court, in accordance with the California Court of Appeal's opinion, *see* Lodgment no. 2 at 15–16, denied petitioner's *Blakely* claim on the merits, relying on *People v. Black,* 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005) ("*Black I*"), which was subsequently *vacated by, Black v. California,* 549 U.S. 1190, 127 S.Ct.

1210, 167 L.Ed.2d 36 (2007). Nevertheless, as noted above, the California Supreme Court denied the petition for review "without prejudice to any relief [petitioner] might be entitled" under *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), which was then pending before the United States Supreme Court.

In *Cunningham*, the United States Supreme Court held California's determinate sentencing law ("DSL") violated the Constitution to the extent it allows a judge to make factual findings that justify the imposition of an upper term of imprisonment as the maximum term. *Cunningham*, 549 U.S. at 274, 293, 127 S.Ct. at 860, 871. In so holding, the Supreme Court noted that "California's DSL, and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense." *Id.* at 279, 127 S.Ct. at 862. The Supreme Court then concluded, based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), that "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." *Cunningham*, 549 U.S. at 288, 127 S.Ct. at 868 (citations omitted); *see also Blakely*, 542 U.S. at 303, 124 S.Ct. at 2537 ("'[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (emphasis in original)). Finally, the Supreme Court held that "[e]xcept for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Cunningham*, 549 U.S. at 288, 127 S.Ct. at 868 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2348; other citation omitted). Thus, the Supreme Court explicitly rejected the California Supreme Court's opinion in *Black I* that a judge could make factual findings and exercise his discretion to impose an upper term sentence under California's DSL without violating a defendant's Sixth Amendment right to a jury trial. *Id.* at 289–93, 127 S.Ct. at 868–71.

The California Supreme Court's denial of petitioner's request for review, which upheld the California Court of Appeal's decision under *Black I* to deny petitioner's challenge to the upper term sentences on counts 1 and 4, was contrary to clearly established federal law.[5] *See Butler*, 528 F.3d at 640–41 ("*Black I* reached its result—upholding the DSL—by applying a rule of decision contrary to clearly established Supreme Court precedent."). Now this Court must resolve petitioner's claim *de novo* "without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, ——, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Frantz v. Hazey*, 533 F.3d 724, 735–37 (9th Cir.2008) (en banc); *Butler*, 528 F.3d at 641.

"[U]nder California law, only one aggravating factor is necessary to set the upper term as the maximum sentence...." *Butler*, 528 F.3d at 643; *People v. Black*, 41 Cal.4th 799, 813, 62 Cal. Rptr.3d 569, 579, 161 P.3d 1130 (2007) (*Black II*), *cert. denied*, —— U.S. ——, 128 S.Ct. 1063, 169 L.Ed.2d 813 (2008); *People v. Osband*, 13 Cal.4th 622, 728, 55 Cal.

---

**5.** To the extent respondent contends *Cunningham* cannot be applied retroactively to petitioner, Answer at 6, 13–14, his contention fails. The Ninth Circuit has specifically held that *Cunningham* "did not announce a new rule of constitutional law and may be applied retroactively on collateral review." *Butler*, 528 F.3d at 639; *see also In re Gomez*, 45

Cal.4th 650, 660, 88 Cal.Rptr.3d 177, 185, 199 P.3d 574 (2009) ("*Cunningham* applies retroactively to any case in which the judgment was not final at the time the decision in *Blakely* was issued."). Since petitioner's judgment was final in 2006, after *Blakely* was decided, *Cunningham* applies to · petitioner's sentence.

Rptr.2d 26, 95, 919 P.2d 640 (1996), *cert. denied,* 519 U.S. 1061, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). "For that reason, if at least one of the aggravating factors on which the judge relied in sentencing [petitioner] was established in a manner consistent with the Sixth Amendment, [petitioner's] sentence does not violate the Constitution." *Butler,* 528 F.3d at 643; *Black II,* 41 Cal.4th at 813, 62 Cal.Rptr.3d at 579, 161 P.3d 1130.

▪ Here, the trial court in imposing upper term sentences on the continuous sexual abuse count (count 1) and one of the lewd act with a child counts (count 4), found two factors in aggravation: (a) the victim was a "particularly vulnerable victim[,]" RT 340:14–341:19; *see also* Cal. Rule of Court 4.421(a)(3) (2005) (factors in aggravation include "[t]he victim was particularly vulnerable"); and (b) petitioner abused a "position of trust or confidence[,]" RT 340:14–341:19; *see also* Cal. Rule of Court 4.421(a)(11) (2005) (factors in aggravation include "[t]he defendant t[aking] advantage of a position of trust or confidence to commit the offense.").[6] Additionally, petitioner testified at trial that he had previously been convicted of federal bank fraud, a felony, and had served a year and a day in prison, RT 239:25–240:6, 252:2–12, and this admission would have been another aggravating factor for imposing the upper term, *see* Cal. Rule of Court 4.421(b)(3) (2005) (aggravating factors include that "[t]he defendant has served a prior prison term"), had the trial court relied upon it. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63.

▪ A petitioner is entitled to habeas relief only if the sentencing error was not harmless. *Washington v. Recuenco,* 548 U.S. 212, 222, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006); *Butler,* 528 F.3d at 648; *see also Medina v. Hornung,* 386 F.3d 872, 877 (9th Cir.2004) ("[E]ven if a state court's decision was contrary to, or an unreasonable application of, clearly established federal law, habeas relief may still be denied absent a showing of prejudice."). "[T]he standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence'" on petitioner's sentence. *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Butler,* 528 F.3d at 648; *see also United States v. Zepeda–Martinez,* 470 F.3d 909, 913–14 (9th Cir.2006) (*Apprendi* error harmless under *Recuenco* when record contained "overwhelming and uncontroverted evidence" supporting factual finding court made in sentencing defendant to enhanced term). "Applying this standard, . . . petitioner is not entitled to habeas relief." *Brecht,* 507 U.S. at 623, 113 S.Ct. at 1714.

The jury believed Jane Doe's testimony, rather than petitioner's testimony, and found petitioner guilty on all counts. Thus, it is clear that a jury would have found at least one of the aggravating factors beyond a reasonable doubt, i.e., that Jane Doe was "particularly vulnerable" or petitioner abused a "position of trust[,]" and under *Cunningham,* one aggravating

---

6. California courts have upheld the imposition of upper term sentences based on these aggravating factors. *See People v. Stitely,* 35 Cal.4th 514, 575, 26 Cal.Rptr.3d 1, 49, 108 P.3d 182, *cert. denied,* 546 U.S. 865, 126 S.Ct. 164, 163 L.Ed.2d 151 (2005) (The victim was particularly vulnerable because, in addition to her age, she "depended on defendant for shel- ter, and . . . had no other apparent place to go."); *People v. Clark,* 12 Cal.App.4th, 663, 666, 15 Cal.Rptr.2d 709 (1992) (seven and nine-year-old stepdaughters who defendant continuously sexually abused were particularly vulnerable victims given defendant's "position of trust and confidence regarding the children").

factor is sufficient for the trial court to impose the upper term sentence on petitioner. Thus, the trial court's imposition of upper term sentences on counts 1 and 4 did not violated the Sixth Amendment, and petitioner's request for habeas relief on his upper term sentences should be denied.

■■■ There also is no merit to petitioner's claim that the imposition of consecutive sentences by the trial court violated *Apprendi* and its progeny. To the contrary, the Supreme Court has recently determined that the Sixth Amendment does not require juries to make findings of fact regarding the imposition of consecutive sentences, and states may allow judges to make those factual findings. *Oregon v. Ice*, —— U.S. ——, 129 S.Ct. 711, 714–15, 172 L.Ed.2d 517 (2009). Therefore, the California Supreme Court's denial of petitioner's consecutive sentencing claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### VII

■■■ To review the sufficiency of evidence in a habeas corpus proceeding, the Court must determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Lewis v. Jeffers*, 497 U.S. 764, 781, 110 S.Ct. 3092, 3102–03, 111 L.Ed.2d 606 (1990) (citation omitted); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

All evidence must be considered in the light most favorable to the prosecution, *Lewis*, 497 U.S. at 781, 110 S.Ct. at 3103; *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, and if the facts support conflicting inferences, reviewing courts "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir.2004) (per curiam); *Turner v. Calderon*, 281 F.3d 851, 882 (9th Cir.2002). Furthermore, under the AEDPA, federal courts must "apply the standards of *Jackson* with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir.2005), *cert. denied*, 546 U.S. 1137, 126 S.Ct. 1142, 1145, 163 L.Ed.2d 1000 (2006). These standards are applied to the substantive elements of the criminal offenses under state law. *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir.) (en banc), *cert. denied*, 543 U.S. 956, 125 S.Ct. 415, 160 L.Ed.2d 318 (2004).

■■■ In Ground Two, petitioner claims there is insufficient evidence to support the great bodily injury enhancement to count 4 since impregnating a minor victim cannot constitute "great bodily injury" within the meaning of P.C. § 12022.7(a).[7] Memo. at 7–13. There is no merit to this claim, as the California Court of Appeal held:

P.C. § 12022.7(a) & (f) (2005).

---

7. In pertinent part, P.C. § 12022.7 states:

 (a) Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years.

 \* \* \*

 (f) As used in this section, "great bodily injury" means a significant or substantial physical injury.

The prosecution relied on the victim's pregnancy and abortion as proof of great bodily injury. [Petitioner] argues that pregnancy does not constitute great bodily injury within the meaning of Penal Code section 12022.7, subdivision (a). [¶] Under Penal Code section 12022.7, subdivision (a), the court must impose a three-year enhancement when a defendant personally inflicts great bodily injury during the commission of a felony. The statute defines "great bodily injury" as "a significant or substantial physical injury." (Pen.Code, § 12022.7, subd. (f).) The victim need not have suffered a permanent or prolonged injury, disfigurement, or impairment. [¶] The question of whether the victim suffered a great bodily injury is a question of fact for the jury. The jury's finding must be upheld so long as substantial evidence supports it. [¶] Courts have held that a pregnancy may qualify as a great bodily injury. In *People v. Sargent* (1978) 86 Cal.App.3d 148, [150 Cal.Rptr. 113,] the defendant forcibly raped a 17–year–old girl at knifepoint. The girl became pregnant and had an abortion. In *Sargent*, this court held that, "[p]regnancy resulting from rape is great bodily injury." (*Sargent, supra,* at p. 151 [150 Cal.Rptr. 113], citing *People v. McIlvain* (1942) 55 Cal.App.2d 322, 334 [130 P.2d 131] (dis. opn. of Schauer, J.).) We explained that a pregnancy resulting from rape is not necessarily incidental to the rape itself. A pregnancy cannot be described as trivial or insignificant. And it does not involve merely psychological or emotional distress. Instead, it is a significant and substantial physical injury. A pregnancy involves major physical changes and bodily impairment which affect a woman's health and well-being. (*Sargent, supra,* at p. 151 [150 Cal.Rptr. 113].) The possible results of a pregnancy—i.e., childbirth, abortion, and miscarriage—also involve additional traumatic physical experiences. (*Id.* at p. 152 [150 Cal.Rptr. 113].) In *Sargent*, we concluded that the victim clearly suffered a great bodily injury. (*Ibid.*) [¶] In *People v. Superior Court (Duval)* (1988) 198 Cal.App.3d 1121, [244 Cal. Rptr. 522,] a high school vice principal was charged with various sex crimes, including statutory rape with two students. One of the students, a 15–year–old sophomore, became pregnant and had an abortion. In addition to the allegations for the substantive offenses, the People alleged that the defendant intentionally inflicted great bodily injury under a former version of Penal Code section 12022.7. The trial court dismissed this allegation and the People filed a petition for writ of mandate. Although the appellate court affirmed the trial court's dismissal based on a lack of specific intent as required under the former statute, the court agreed with this court's holding in *Sargent* that the pregnancy constituted a great bodily injury. (*Duval, supra,* at pp. 1132, 1134 [244 Cal.Rptr. 522].) The court in *Duval* specifically held, "[p]regnancy, abortion, or venereal disease constitute injury significantly and substantially beyond that necessarily present in the commission of an act of unlawful sexual intercourse." (*Id.* at p. 1131 [244 Cal.Rptr. 522].)[¶] Although this issue is before the California Supreme Court, we find no reason at this point to reverse our own precedent. While it is strange to describe a pregnancy as an injury because it is a normal experience for many women, it is undeniably an additional physical condition separate from the rape itself. As we stated in *Sargent*, it is a condition that often involves other physical symptoms and, if the victim decides to abort the fetus, an additional invasive procedure. (*See People v. Sargent, supra,* 86 Cal. App.3d at pp. 151–152 [150 Cal.Rptr.

113].) When the rape results in a pregnancy, the harm to the victim is significantly greater and therefore warrants an additional enhancement under Penal Code section 12022.7, subdivision (a). [¶] In this case, the evidence shows that blood from [petitioner] and the fetal tissue indicated paternity by 99.99 percent. The evidence amply supported the jury's finding that [petitioner] impregnated the victim. As a result of the rape, the victim also had a late-term abortion. Because a pregnancy and abortion under these circumstances constitute great bodily injury, we conclude that substantial evidence supported the jury's finding under Penal Code section 12022.7, subdivision (a).

Lodgment no. 2 at 12–15 (footnote omitted).

After the California Court of Appeal affirmed petitioner's judgment, the California Supreme Court rejected the argument that pregnancy does not constitute great bodily injury within the meaning of P.C. § 12022.7(a), holding that "based solely on evidence of the pregnancy, the jury could reasonably have found that [the] 13–year old [victim] suffered a significant or substantial physical injury." *People v. Cross*, 45 Cal.4th 58, 66, 82 Cal.Rptr.3d 373, 380, 190 P.3d 706 (2008). The circumstances in *Cross* are quite similar to petitioner's case: the defendant married the minor victim's mother and began sexually molesting the minor over several months, resulting in the minor victim becoming pregnant and having a late-term abortion. *Id.* at 61–62, 82 Cal.Rptr.3d at 376, 190 P.3d 706. The California Supreme Court's "interpretation of state law ... binds [this] federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005) (per curiam); *Medley*, 506 F.3d at 862.

 Moreover, as the Court of Appeal held, there was more than sufficient evidence to support the jury's determination that petitioner personally inflicted great bodily when he impregnated 12–year old Jane Doe. The victim testified it was petitioner who impregnated her, RT 85:20–89:26, and the DNA analysis of the victim's and petitioner's blood and the fetal tissue showed the probability of petitioner's paternity was 99.99%. RT 141:26–143:11. The testimony of a single witness is sufficient to uphold a conviction, *Bruce*, 376 F.3d at 957–58; *United States v. Larios*, 640 F.2d 938, 940 (9th Cir.1981), and, absent exceptional circumstances not present here, a federal court in a habeas corpus proceeding cannot redetermine the credibility of witnesses when it has not observed those witnesses's demeanor. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983); *see also Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir.1997) ("The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." (quoting *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995))). Thus, substantial evidence supports the jury's determination that petitioner personally inflicted great bodily injury on the victim. *Cross*, 45 Cal.4th at 66, 82 Cal.Rptr.3d at 380, 190 P.3d 706; *see also People v. Superior Court (Duval)* 198 Cal.App.3d 1121, 1131, 244 Cal.Rptr. 522 (1988) ("Pregnancy, abortion, or venereal disease constitute injury significantly and substantially beyond that necessarily present in the commission of an act of unlawful sexual intercourse.").

Accordingly, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law.

1146

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; (3) denying petitioner's request to stay these proceedings; and (4) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

DATE: March 30, 2009.