[No. G043037. Fourth Dist., Div. Three. Mar. 24, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JASINTO DURAN MENESES, Defendant and Appellant.

## Counsel

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RYLAARSDAM, Acting P. J.**—A jury convicted defendant Jasinto Duran Meneses of committing a lewd act with a child under the age of 14 (Pen. Code, § 288, subd. (a); all further statutory references are to this code unless otherwise stated) and found true he had substantial sexual conduct with a child (§ 1203.066, subd. (a)(8)) and inflicted great bodily injury (§§ 667.61, subds. (b), (e), 12022.8). The court sentenced him to 15 years to life based on the finding of great bodily injury. (§ 667.61, subds. (b), (e).) He contends there was insufficient evidence to support the great bodily injury allegation and that the sentence was cruel and unusual. We affirm.

## FACTS

The 12-year-old victim lived in a two-bedroom apartment with her parents, defendant, her male cousin, who was in his late 20's, and his wife and children. On several occasions he tripped her, threw her to the ground, and kissed her openmouthed on her mouth.

One night the victim, who had been sleeping, arose to get some water, after which she went into the bathroom, closed the door, and turned on the light. She then saw defendant, who smelled of alcohol. Defendant threw her to the floor and covered her mouth with his hand. As he removed her clothing, frightened, the victim tried to push him away. Defendant touched her breasts, put his finger in her vagina, and then put his penis in her vagina, moving up and down. After several minutes "white stuff came out of his penis."

The next morning defendant told the victim not to tell her parents and she did not because she was afraid he might harm her or her family. Several months later, defendant told her not to tell her parents if she was pregnant; if her parents asked she should say her boyfriend was the father.

Thereafter when the victim's mother asked her if she was pregnant, she said she did not know. A visit to the doctor confirmed her pregnancy and a child was subsequently born.

## DISCUSSION

### 1. *Great Bodily Injury*

██ Great bodily injury is defined as "a significant or substantial physical injury." (§ 12022.7, subd. (f).) Its occurrence is a fact question for the jury. (*People v. Cross* (2008) 45 Cal.4th 58, 64 [82 Cal.Rptr.3d 373, 190 P.3d 706].) Defendant contends the prosecution did not prove great bodily injury because, other than the pregnancy, there was no evidence the victim suffered any physical harm other than the lewd act itself and the pregnancy was not burdensome.

*People v. Cross, supra,* 45 Cal.4th 58 is instructive. There the defendant was convicted, among other things, of committing a lewd act on a child under 14 when he had intercourse with his 13-year-old stepdaughter, who became pregnant. The jury found true the great bodily injury allegation and for that crime the defendant was sentenced to 15 years to life. He made a similar argument to the one defendant makes here, i.e., that a victim who is impregnated by unlawful, but not forcible, intercourse never suffers great bodily injury. (*Id.* at p. 63.) The court rejected this claim but also declined to hold the opposite. It did not decide whether a victim always suffers great bodily injury when impregnated by nonconsensual intercourse. (*Id.* at p. 66.) But it did uphold the finding the 13-year-old victim had suffered great bodily injury "based solely on evidence of the pregnancy." (*Ibid.*)

In so doing it pointed out that the usual proof of great bodily injury is evidence of pain or necessary medical care. "Thus, when victims of unlawful sexual conduct experience physical injury and accompanying pain beyond that 'ordinarily experienced' by victims of like crimes [citation], such additional . . . 'gratuitous injury' will support a finding of great bodily injury [citation]." (*People v. Cross, supra,* 45 Cal.4th at p. 66.)

Defendant argues *Cross* is different from this case. He points to evidence adduced in that case that the victim, who had never delivered a baby, "was carrying a fetus 'the size of two-and-a-half softballs' " (*People v. Cross, supra,* 45 Cal.4th at p. 66) while here there was no evidence of either the victim's or the baby's size or weight. He also asserts the victim was unaware of her pregnancy until a few months before the baby's birth and because no one else mentioned it, it must not have been visible. He argues there was nothing extraordinary about the delivery—no extended hospital stay or unusual procedures. Finally, he maintains the jury's failure to convict him of rape shows it "apparently reject[ed]" the claim the intercourse was accompanied by force.

■ This does not persuade. Defendant's act resulted in the impregnation of the victim when she was 12. She endured the self-evident trauma and suffering that accompanies a pregnancy until she delivered, at age 13. She was in labor from 5:00 a.m. until sometime the next day. And delivery hurt "a lot."

■ Lack of evidence of the size of the fetus or that the victim did not immediately realize she was pregnant are not dispositive; at most this presents conflicting evidence for the jury to determine and which we do not reweigh. (*People v. Smith* (2005) 37 Cal.4th 733, 738–739 [37 Cal.Rptr.3d 163, 124 P.3d 730].) " '[I]f the circumstances reasonably justify the . . . findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [40 Cal.Rptr.3d 118, 129 P.3d 321], disapproved on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151 [74 Cal.Rptr.3d 454, 180 P.3d 224].)

In reaching our conclusion that it was reasonable for the jury to find the victim suffered great bodily injury, we are influenced by, although do not rely on, Justice Corrigan's concurring opinion in *People v. Cross, supra,* 45 Cal.4th 58 at pages 72–77. In evaluating pregnancy within the scope of great bodily injury she stated that it is "categorically different" from other types of injuries. (*Id.* at p. 73.) "By its nature it will always impose on the victim a sufficient impact to meet the great bodily injury standard. . . . 'Pregnancy can have one of . . . three results—childbirth, abortion or miscarriage. Childbirth

is an agonizing experience. . . .' . . . [T]he impact of any pregnancy on the physical condition of the victim is never insignificant or insubstantial." (*Ibid.*) While pregnancy is difficult for any woman, here the pregnancy forced on this 12-year-old victim significantly exacerbated her injury.

## 2. Cruel and Unusual Punishment

Defendant claims his 15-year-to-life sentence violates the federal and state prohibition against cruel and unusual punishment because it is disproportionate to the severity of the offense. Before sentencing he made the same objection, asserting that the great bodily injury finding was based solely on the victim's pregnancy, the probability of which was small, and not on use of a weapon or the method by which the crime was committed. He noted that for the same crime, where the victim does not become pregnant, the sentence can be as low as three years. He also relied on the probation report's finding of a slight risk of recidivism and "lack of a significant prior record." He asserted some more serious crimes are not punished as harshly and finally emphasized it was not likely he would be paroled. The court overruled his objection, stating the sentence was not so rare or so disproportionate as to shock the conscience.

■ The Eighth Amendment to the United States Constitution "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citations.]" (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 123 S.Ct. 1179].) "A punishment violates the Eighth Amendment if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.' [Citation.]" (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230 [65 Cal.Rptr.3d 177].) The United States Supreme Court noted this principle is "applicable only in the 'exceedingly rare' and 'extreme' case. [Citations.]" (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73 [155 L.Ed.2d 144, 123 S.Ct. 1166].)

" ' "A tripartite test has been established to determine whether a penalty offends the prohibition against cruel . . . [or] unusual punishment. First, courts examine the nature of the offense and the offender, 'with particular regard to the degree of danger both present to society.' Second, a comparison is made of the challenged penalty with those imposed in the same jurisdiction for more serious crimes. Third, the challenged penalty is compared with those imposed for the same offense in other jurisdictions. [Citations.] In undertaking this three-part analysis, we consider the 'totality of the circumstances' surrounding the commission of the offense. [Citations.]" [Citation.]' [Citations.]" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 569 [59 Cal.Rptr.3d 876].) A defendant has a "considerable burden" to show a punishment is cruel and unusual (*People v. Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97,

534 P.2d 1001]), and "[o]nly in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive . . . [citations]" (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494 [90 Cal.Rptr.2d 517]).

Examination of the evidence in light of the three factors shows this is not one of those rare cases. As to the nature of the offense and offender, defendant, while admitting the crime was serious, argues the "non-forcible intercourse" occurred only once during a state of intoxication, suggesting the attack was not planned. He also repeats his argument that the pregnancy which led to the sentence is not the type of bodily injury that generally triggers an enhancement. He complains that he is being punished more harshly than a defendant who commits the same act where the victim does not become pregnant, who receives only an eight-year term, emphasizing the disparity between those two punishments. But he fails to acknowledge that the trauma of the pregnancy, as discussed above, caused the victim more serious consequences, a valid basis for the higher sentence. That a pregnancy might not be the usual type of bodily injury does not change the analysis; it was still bodily injury to the victim and she will be burdened with that for the remainder of her life. While his alleged remorse would be appropriate it does not override other facts.

And defendant's reliance on his drunken state is weakened by his two prior convictions for driving under the influence, one of which resulted in injury. While the probation report might have reported there was a small risk he would commit another sexual offense, his documented problems with alcohol during which he commits crimes, suggest his alcohol abuse is more likely than not to recur. His "modest background" does not mitigate against that.

Nor does the comparison of his sentence to those for other crimes in California persuade us the sentence is cruel or unusual. In his sentencing brief defendant listed 24 examples of crimes with lesser sentences. But, as the Attorney General points out, the lower sentences for listed sex crimes such as rape (§ 261, subd. (a)(1)), forcible oral copulation of a minor under age 14 (§ 288a, subd. (c)(2)), and forcible child molestation (§ 288, subd. (b)(1)) would be increased to the life sentence meted out here if the defendant were also found to have committed great bodily injury. (§ 667.61.)

Finally, defendant's comparison of his sentence to sentences in other jurisdictions is unavailing. Although he seems to suggest California's sentences are harsher for these types of offenses than in most other jurisdictions, he cites statutes from only two states, Iowa and Idaho, and neither of these is for the crime committed here.

In sum, although the sentence is significant, so was the crime. It was not "so disproportionate to the crime for which it [was] inflicted that it shocks the conscience and offends fundament notions of human dignity" (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921], fn. omitted) and was not cruel or unusual.

## DISPOSITION

The judgment is affirmed.

Bedsworth, J., concurred.

**BEDSWORTH, J.,** Concurring.—I am in complete agreement with my colleague that there is abundant evidence to support the great bodily injury allegation in this case. I write merely to express my personal conviction Justice Corrigan and Chief Justice George were right in their concurring opinion in *People v. Cross* (2008) 45 Cal.4th 58, 73 [82 Cal.Rptr.3d 373, 190 P.3d 706]: "By its nature [pregnancy] will always impose on the victim a sufficient impact to meet the great bodily injury standard."

Justice Corrigan has already said all that should be necessary on this point, so I can be brief. There are only three possible results of a pregnancy, and none of them can fairly be described as trivial or insignificant in terms of bodily injury. In addition to the " 'agon[y]' " of childbirth (*People v. Cross, supra,* 45 Cal.4th at p. 73, quoting *People v. Sargent* (1978) 86 Cal.App.3d 148, 152 [150 Cal.Rptr. 113]), the two other potential results are equally traumatic. " 'An abortion by whatever method used constitutes a severe intrusion into a woman's body. A miscarriage speaks for itself.' " (*People v. Cross,* at p. 73, quoting· *Sargent,* at p. 152.) Quite apart from the emotional issues the statute does not address, a pregnancy will always result in physical consequences we should recognize as sufficient to qualify under the statute without having to put our hands in the wounds.

The defendant in this case argued insufficiency of the evidence. He argued there was no evidence of the baby's size or weight, no evidence of the size of the victim, no showing of a difficult delivery or the necessity of unusual procedures. He contended her testimony that delivery of the baby "hurt a lot"—the testimony of a 13-year-old girl about the pain of childbirth—was inadequate. That is what we have been reduced to by our efforts to evaluate childbirth, abortion, and miscarriage as if they were indistinguishable from abrasions, lacerations, and broken bones.

And there is nothing unique about this case. The present state of the law will require 13 year olds to continue to take the stand and tearfully relive the

end of their pregnancies. It will require defense attorneys to cross-examine on the point, and judges and juries to try to decide how much pain is enough and just how to go about trying to separate physical pain from emotional torment. It will make us all accessories after the fact.

It is hard for me to imagine how we can require the victim of a rape to come to court and try to *persuade us* the physical suffering of her childbirth or abortion was sufficient to meet the statutory standard. To my mind, there is no adequate explanation for the continued existence of a rule that requires a teenager to sit on the witness stand and *convince us* her miscarriage was painful enough to qualify as great bodily injury. But as long as we keep writing opinions that base a finding of great bodily injury upon the relative size of the victim vis-à-vis the baby she delivered, or testimony about how painful the miscarriage was, or how her 19th hour of labor felt, that is what we will have. We will perpetuate a heartless spectacle that is both unseemly and unnecessary.

Someone—be it the Legislature or our Supreme Court—has to address the unutterable cruelty of forcing the revictimization of these women. And the longer we delay, the more suffering we force upon them.

**ARONSON, J.,** Concurring.—I concur in the judgment, and agree there is ample evidence to support the jury's great bodily injury finding; indeed, given the victim's description of the childbirth, no rational jury could conclude otherwise. I write separately to express my disagreement with my colleague's concurrence. Adopting Justice Corrigan's concurrence in *People v. Cross* (2008) 45 Cal.4th 58, 72–76 [82 Cal.Rptr.3d 373, 190 P.3d 706] (*Cross*), my colleague urges the Legislature or the Supreme Court to declare that criminally imposed pregnancies constitute great bodily injury. In my view, any change in the law should come from the Legislature, not the courts.[1] The concurrence implicitly embraces Justice Corrigan's suggestion "that a properly instructed jury would have been told that a sexual assault that impregnates the victim constitutes great bodily injury." (*Cross*, at p. 75.) No

---

[1] The Legislature, rather than the judicial branch, is in the best position to determine whether *all* criminally imposed pregnancies result in great bodily injury, a proposition not at all clear. According to a leading medical text, symptoms of early spontaneous miscarriages may involve abdominal pain and bleeding, which "can vary from being life-threateningly severe . . . to the smallest brown spotting. Occasionally there may be no symptoms at all . . . ." (Magowan et al., Clinical Obstetrics and Gynaecology (2d ed. 2009) pp. 98–99.) The Legislature has the means to gather the relevant evidence and weigh the policy implications of any proposed change. (*People v. Farley* (2009) 46 Cal.4th 1053, 1119 [96 Cal.Rptr.3d 191, 210 P.3d 361] [" ' " 'the power to define crimes and fix penalties is vested exclusively in the legislative branch' " ' "].) For instance, the Legislature could consider whether it would advance the state's penological policy to apply a great bodily injury enhancement to an 18 year old who impregnates his 17-year-old girlfriend and is therefore charged with unlawful sexual intercourse. (Pen. Code, § 261.5.)

doubt this proposal is well-intentioned, but an instruction along these lines would violate basic constitutional rights.

The majority in *Cross* did not adopt Justice Corrigan's proposal. Rather our Supreme Court "has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury." (*Cross, supra*, 45 Cal.4th at p. 64.) This basic principle stems from due process guarantees and the accused's right to a jury trial. Due process requires the state to prove beyond a reasonable doubt every fact necessary to constitute the crime (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068]), and a defendant has the constitutional right to have a jury make this determination (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277 [124 L.Ed.2d 182, 113 S.Ct. 2078] [right to a jury trial includes "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty' "]). "If a judge were permitted to instruct the jury on the basis of assertedly 'undisputed' evidence that a particular element had been established as a matter of law, the right to a jury trial would become a hollow guarantee." (*People v. Figueroa* (1986) 41 Cal.3d 714, 730 [224 Cal.Rptr. 719, 715 P.2d 680]; see *People v. Lawson* (1987) 189 Cal.App.3d 741, 747 [234 Cal.Rptr. 557] ["[n]o matter how conclusive the evidence, the court may not directly inform the jury an element of the crime charged has been established"].)

*United States v. Gaudin* (1995) 515 U.S. 506 [132 L.Ed.2d 444, 115 S.Ct. 2310] illustrates the point. There, section 1001 of title 18 of the United States Code proscribed knowingly making any false material declaration under oath. The trial judge instructed the jury that, as a matter of law, the defendant's statements were material. (*Gaudin*, at p. 508.) In an opinion authored by Justice Scalia, the Supreme Court affirmed the Court of Appeals' decision reversing the defendant's conviction. After determining materiality was a mixed question of law and fact, the Supreme Court concluded that "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." (*Id.* at p. 514.) Thus, the trial court's instruction violated the defendant's "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." (*Id.* at pp. 522–523.)

*Gaudin* and numerous other authorities make clear that courts may not declare as a matter of law that all pregnancies constitute great bodily injury. Removing this issue from the jury by judicial fiat would violate a defendant's

right to due process and trial by jury. As is often the case, the Constitution restrains our own policy preferences. Whether to make all criminally imposed pregnancies subject to a great bodily injury enhancement should be a legislative decision.

Appellant's petition for review by the Supreme Court was denied June 15, 2011, S192263.