Filed 12/4/13  P. v. Waite CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUKE AUSTIN WAITE,<br><br>    Defendant and Appellant. | 2d Crim. No. B245260<br>(Super. Ct. No. F431155)<br>(San Luis Obispo County) |

Luke Austin Waite and two of his friends committed an armed home invasion robbery of people they believed were drug dealers.  Masked, clad in black clothing and armed with handguns, Waite and accomplice Jason Graves burst into the home and ordered the occupants to the wall or to the floor.  During an ensuing fight, Waite shot one of his resisters in the torso and another in the face, both at close range.  A third resister wrested Graves' gun from him and shot both Waite and Graves, killing the latter.  Both victims of Waite's gunshots suffered serious injuries but survived.

Waite now appeals the judgment entered after a jury convicted him on two counts of attempted willful, deliberate and premeditated murder (Pen. Code,[1] §§ 664/187, subd. (a)), four counts of attempted first degree residential robbery in concert (§§ 664/211, 213, subd. (a)(1)(A)), and one count each of first degree burglary (§ 459)

---

[1] All further undesignated statutory references are to the Penal Code.

and conspiracy to commit robbery (§ 182, subd. (a)(1)). The jury also found true allegations that appellant personally used and intentionally discharged a firearm in committing the attempted murders, robberies, and burglary (former § 12022, subd. (a)(1), § 12022.53, subd. (d)), and inflicted great bodily injury on the victims in committing the attempted murders, two of the robberies, and the burglary (§ 12022.7).[2] The trial court sentenced him to a state prison term of 32 years 8 months plus 64 years to life. Appellant contends the evidence is insufficient to support the findings that the attempted murders were willful, deliberate, and premeditated. He also claims that his sentence amounts to cruel and unusual punishment. We affirm.

STATEMENT OF FACTS

On the night of April 8, 2009, Anthony Joseph Cappelluti, Benjamin Terry, and Seth Terrazas were at their apartment in Morro Bay along with Christopher Sidebottom, Wade Johnson, and Derek Rodrigues. Shortly after 10:00 p.m., two men, later identified as appellant and Jason Graves, burst into the apartment through the kitchen door. Appellant and Graves were holding handguns and were wearing ski masks and dark clothing. They claimed to be police officers and ordered everyone to move against the wall or get on the ground.

Terrazas grabbed Graves and began struggling with him. Cappelluti put his arms around appellant and began pushing him back toward the kitchen door. Terry, Sidebottom, Johnson, and Rodrigues ran out of the apartment through the front door.

Cappelluti managed to push appellant out of the kitchen door and onto the adjacent carport. As the two continued struggling, appellant fired at least two shots. Sidebottom witnessed the struggle and came to Cappelluti's aid. After Sidebottom used his knee to strike appellant in the head several times, appellant shot him in the torso at close range. Sidebottom stumbled away and hid behind a vehicle. As Cappelluti stood

_____

[2] Appellant was also charged with the murder (§ 187, subd. (a)) of his accomplice, Jason Graves. After the jury was unable to reach a verdict on that count, the court declared a mistrial as to that count and later dismissed it.

2

behind appellant and pinned him against a truck, appellant held his gun over his head and fired in a backwards direction, hitting Cappelluti in the face.[3]

In the meantime, Terrazas continued struggling with Graves inside the apartment. Terrazas tackled Graves and placed his knees on each side of Graves' ribcage. As Terrazas' left hand was grasping the barrel of Graves' gun, the weapon fired and the bullet hit the front door jam. Graves used his free hand to strike Terrazas several times on the side of his head, causing a large gash that ultimately left a scar. As the two men continued to struggle, Terrazas managed to turn the gun toward Graves' stomach and pulled the trigger. Graves released the gun and Terrazas grabbed it. Terrazas stood up and saw appellant approaching the front door with a gun in his hand. Terrazas shot appellant in the torso and appellant staggered out of sight. Terrazas then pointed the gun back at Graves and shot him again. Terrazas went outside and saw appellant stumbling toward the carport. Terrazas fired another shot at appellant, and appellant dropped to the ground. Terrazas checked appellant for signs of life and believed he was dead. Terrazas removed appellant's gun and put both weapons on the bed in Cappelluti's bedroom. He then grabbed a knife from the kitchen and approached appellant, who was now lying outside the front door.

The police arrived shortly thereafter. Graves was found in the carport area and was pronounced dead at the scene. Appellant was taken to the hospital, where he was treated for his gunshot wounds. In one of the bedrooms of the apartment, the police found over $9,500 in cash, two large bags of marijuana, and a scale. The police also

---

[3] Although Terrazas and Cappelluti gave testimony suggesting it was Graves who struggled with Cappelluti in the carport and shot Cappelluti and Sidebottom, the jury's true findings on the firearm use allegations reflect it adopted the prosecution's theory and found that appellant shot Cappelluti and Sidebottom. Appellant does not dispute that the jury made such findings, nor does he challenge the sufficiency of the evidence supporting those findings. We therefore need not recount the physical and forensic evidence that supported the prosecution's theory.

found a .25-caliber semiautomatic handgun and a .357-caliber revolver on Cappelluti's bed.

Joshua Coleman, who was initially charged as appellant's codefendant, testified for the prosecution.[4]  Coleman and appellant were friends and often smoked marijuana together.  On the night of the incident, appellant came to Coleman's house and said he needed someone to act as the getaway driver for a robbery.  Coleman agreed to participate.  Coleman drove appellant to appellant's house, where they smoked marijuana.  While at appellant's house, Coleman saw appellant holding a .25-caliber gun that Coleman had seen on a previous occasion.

About an hour later, Coleman and appellant drove to Graves' house in San Luis Obispo.  Coleman then drove appellant and Graves to Morro Bay.  Either appellant or Graves directed Coleman to drive by the house where the robbery was to take place.  Coleman was told that the target of the robbery was a drug dealer.  Several cars were parked in front of the house, so they drove to a nearby parking lot.  When they returned to the house about 20 minutes later, fewer cars were there.  Coleman parked his car and left the engine running.  Appellant and Graves, both of whom were wearing dark clothing, got out of the car and walked toward the house.

Shortly after appellant and Graves had exited the car, Coleman heard gunshots.  He drove further away from the house, then returned when he saw either appellant or Graves wearing a ski mask and holding a gun in his hand.  Coleman expected him to get into the car, but he walked back toward the house.  After hearing another round of gunshots, Coleman counted to 30 and drove away.

Appellant offered no evidence in his defense.

---

**4** Pursuant to a plea agreement, Coleman pled guilty to two counts of armed robbery and admitted accomplice firearm use enhancements.  He also agreed to testify truthfully at appellant's trial.  In exchange, it was agreed that Coleman would be sentenced to nine years four months in state prison.

## DISCUSSION

### *Sufficiency of the Evidence*

Appellant contends his convictions for the attempted murders of Cappelluti and Sidebottom must be reversed because the evidence is insufficient to support the jury's findings that the crimes were willful, deliberate, and premeditated.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in prosecutions primarily resting upon circumstantial evidence. (*Ibid.*) "'An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise.'" (*Ibid.*) Our review does not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

An attempted murder is "premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.) "'". . . 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.]" [Citation.] "'Premeditation and deliberation can occur in a brief interval. "The test is not time, but reflection. 'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.'"' [Citation.]" [Citations.]' [Citation.]" (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069.)

In *People v. Anderson* (1968) 70 Cal.2d 15, our Supreme Court identified three types or categories of evidence relevant to the determination of premeditation and deliberation: (1) planning activity; (2) motive; and (3) manner of killing or attempt to kill. (*People v. Perez* (1992) 2 Cal.4th 1117, 1125.) Although these categories of evidence are not exclusive and other types or combinations of evidence might also support a finding of

5

premeditation and deliberation, such a finding will generally be upheld when all three *Anderson* factors are present.  (*People v. Stitely, supra,* 35 Cal.4th at p. 543.)

Substantial evidence of all three *Anderson* factors is present here. Appellant and his accomplices planned to commit a home invasion robbery of someone they thought was a drug dealer.  The undisputed evidence that appellant burst into the apartment while armed with a loaded handgun, and immediately proceeded to point the weapon at Cappelluti's head, supports an inference that appellant engaged in planning activity and was prepared to kill in order to complete the robbery.  (See, e.g., *People v. Lee* (2011) 51 Cal.4th 620, 636 [sufficient evidence of planning activity present where "defendant brought a loaded handgun with him on the night [the victim] was killed, indicating he had considered the possibility of a violent encounter"]; *People v. Young* (2005) 34 Cal.4th 1149, 1183 [jury could infer planning activity from evidence that defendant "executed his planned entry into the house with a loaded gun in his hand"]; *People v. Brito* (1991) 232 Cal.App.3d 316, 323 [evidence of planning activity present where defendant "held the loaded gun pointed toward the victim's face when making his demands"].)  Appellant also had a motive to kill in order to both overcome his victims' resistance and ultimately avoid his apprehension.  (See, e.g., *People v. Koontz* (2002) 27 Cal.4th 1041, 1082 (*Koontz*) [motive of killing "to effectuate a robbery" present where defendant pulled a handgun on his victim and fired a shot in victim's abdomen after victim refused defendant's demand for his car keys]; *Brito, supra*, at p. 323 [sufficient evidence of motive to kill where defendant shot victim who fled and "refus[ed] to comply with his demands for money and gold"].)

Finally, the manner in which appellant attempted to kill his victims supports an inference that he did so with premeditation and deliberation.  Viewed in the light most favorable to the judgment, the manner in which he shot both victims indicates that appellant acted pursuant to "a calculated design to ensure death rather than an unconsidered explosion of violence.  [Citation.]"  (*People v. Horning* (2004) 34 Cal.4th 871, 902-903.)  The fact that appellant fired a shot into a vital area of both victims' bodies

6

at close range demonstrates that he acted with a deliberate and premeditated intent to kill. (*Koontz, supra*, 27 Cal.4th at p. 1082.)

Appellant argues that "the record is virtually devoid of the three types of evidence set forth in *Anderson* as supporting an inference of premeditation and deliberation." In so arguing, appellant at most demonstrates that the evidence *could* have supported a finding that the shootings were the result of an "unconsidered or rash impulse" rather than a preconceived design to kill. (*People v. Stitely, supra*, 35 Cal.4th at p. 543.) It is of no moment, however, whether the evidence might have led to inferences or findings favorable to the defense rather than the prosecution. (*People v. Perez, supra*, 2 Cal.4th at p. 1124.) The issue is whether the evidence, when viewed in the light most favorable to the judgment, supports the jury's findings that appellant acted with premeditation and deliberation when he concededly attempted to kill his victims. The foregoing discussion answers that question in the affirmative.

*Cruel and Unusual Punishment*

Appellant claims that his state prison sentence of 32 years 8 months plus 64 years to life amounts to cruel and unusual punishment under the federal and state Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) He relies upon *People v. Dillon* (1983) 34 Cal.3d 441 (*Dillon*)[5] which provides that a statutory punishment violates the California prohibition against cruel or unusual punishment if "it is grossly disproportionate to the offense for which it is imposed." (*Id.* at p. 478 & fn. 25.) He claims that a consideration of "'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society'" compels the conclusion that his sentence constitutes cruel or unusual punishment. (*Id.* at p. 479.)

Appellant has forfeited this argument on appeal because he did not raise this objection to his sentence in the trial court. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) In any event, the claim lacks on its merits. The Eighth Amendment to the federal Constitution "contains a 'narrow proportionality principle' that 'applies to

---

[5] *Dillon* as abrogated by statute on a different point as explained in *People v. Chun* (2009) 45 Cal.4th 1172, 1186.

noncapital sentences.'"  (*Ewing v. California* (2003) 538 U.S. 11, 20 [sentence of 25 years to life for commercial burglary under California's three strikes law was not grossly disproportionate to the offense].)  "A punishment violates the Eight Amendment if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.'"  (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230 (*Retanan*).)  The United States Supreme Court has noted that this principle is applicable only in the "'exceedingly rare'" and "'extreme'" case.  (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73; *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092 (*Meneses*).)

Punishment may violate the California Constitution if "'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'"  (*Retanan, supra*, 154 Cal.App.4th at pp. 1230-1231.)  The defendant bears the considerable burden of establishing that his sentence is unconstitutional.  (*Meneses, supra*, 193 Cal.App.4th at pp. 1092-1093 [only in the rarest of cases does a sentence constitute cruel and unusual punishment].)  Decisions finding a disproportionate sentence are an "exquisite rarity."  (*People v. Em* (2009) 171 Cal.App.4th 964, 972.)

We consider three factors in determining whether a defendant's punishment violates the Constitution.  (*Dillon, supra*, 34 Cal.3d at pp. 478-480.)  First, we examine the nature of the offense and the offender with particular regard to the degree of danger each presents.  Second, we compare the challenged punishment with punishments for more serious crimes in the same jurisdiction.  Third, the court compares the challenged punishment with punishments for the same offense in other jurisdictions.  (*In re Lynch* (1972) 8 Cal.3d 410, 425-429, superseded by statute on another ground as explained in *People v. Caddick* (1984) 160 Cal.App.3d 46, 51.)  Appellant does not discuss the intrastate and interstate comparison factors, which we deem a concession that his sentence withstands constitutional scrutiny on each basis.  (*Retanan, supra*, 154 Cal.App.4th at p. 1231.)

Appellant has not met his considerable burden of establishing that his sentence is disproportionate to the nature of his offense and the offender. He committed a violent home invasion robbery with a loaded weapon. Moreover, he immediately began firing his gun and shot both of his victims at close range, causing both of them to suffer great bodily injury. As the People note, a considerable portion of appellant's sentence is based on enhancements imposed under section 12022.53, which courts have determined do not amount to cruel and unusual punishment. (See *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1213-1214; *People v. Martinez* (1999) 76 Cal.App.4th 489, 494-496.) Although appellant's youth and relative lack of a significant criminal record weigh in his favor, they do not outweigh the substantial seriousness of the offense. (*People v. Gonzales* (2001) 87 Cal.App.4th 1, 17 ["The lack of a significant prior criminal record is not determinative in a cruel and unusual punishment analysis"].) For these same reasons, Waite's sentence is not grossly disproportionate within the meaning of the Eighth Amendment. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1001 [life without parole sentence for possessing 672 grams of cocaine not cruel and unusual].)[6]

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

---

[6] Appellant's analogy to *Dillon* is plainly inapt. Unlike appellant, the defendant in *Dillon* was a minor and claimed he believed he was about to be shot when he killed his victim. (*Dillon, supra*, 34 Cal.3d at pp. 482-483.) Moreover, the defendant in *Dillon* was not found to have acted with premeditation or deliberation and there was only one victim. (*Id.* at pp. 478-479.)

9

Ginger E. Garrett, Judge

Superior Court County of San Luis Obispo

_____

Susan B. Lascher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.