Filed 7/28/15  P. v. Jones CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040590 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. E1007866) |
| v. | |
| TOMMY AUGMON JONES, | |
| Defendant and Appellant. | |

**STATEMENT OF THE CASE**

A jury convicted defendant Tommy Augmon Jones of attempted murder (Pen. Code, §§ 664/187) and assault with a firearm (Pen. Code, § 245, subd. (a)(2)).  The jury found the following allegations to be true:  defendant personally and intentionally discharged a firearm causing great bodily injury during the commission of the attempted murder (Pen. Code, § 12022.53, subd. (d)), defendant personally inflicted great bodily injury during the commission of the attempted murder (Pen. Code, § 12022.7, subd. (a)), defendant personally used a handgun during the commission of the assault with a firearm (Pen. Code, § 12022.5, subd. (a)), and defendant personally inflicted great bodily injury during the commission of the assault with a firearm (Pen. Code, § 12022.7, subd. (a)).  The jury found not true an allegation that the attempted murder was premeditated.  The jury acquitted defendant of a second count of assault with a firearm.

The trial court sentenced defendant to a total prison term of 30 years to life, as follows: the low term of five years for the attempted murder and a consecutive term of 25 years to life for the Penal Code section 12022.53, subdivision (d) enhancement. The trial court stayed the sentences for the assault with a firearm and the remaining enhancements.

Defendant now appeals from the judgment of conviction. On appeal, defendant contends that his trial counsel rendered ineffective assistance in failing to impeach the victim with a 2001 finding that the victim was not guilty of battery by reason of insanity. Defendant also contends that his sentence constitutes cruel and unusual punishment. As set forth below, we will affirm.

## STATEMENT OF THE FACTS

At approximately 2:00 a.m. on November 11, 2010, Roger Shorter was involved in an argument with defendant and several other men outside of the Brass Rail, a Sunnyvale nightclub. Shorter testified that he was trying to defuse the situation. Shorter spoke with defendant and asked defendant, "Are we cool?" Defendant replied, "No, it ain't cool." Shorter walked away from defendant. Shorter spoke with a friend, and then he heard four gunshots fired in "rapid" succession. A bullet struck Shorter's leg, leaving an entry wound and exit wound and causing permanent damage to the leg. Shorter testified that he did not see the person who shot him.

Brandy Millner worked as a dancer at the Brass Rail during the early morning hours on November 11, 2010. While Millner was working, she spoke with a man named "Wayne." She gave "Wayne" her cell phone number, and "Wayne" called her while she was working. Millner exited the Brass Rail around 2:00 a.m., and she saw "Wayne" pull out a handgun, "stick his arm straight up," and fire the handgun "in the air." Millner ran and hid behind a car. Approximately 30 seconds after she saw "Wayne" fire the handgun into the air, she heard three to five more gunshots fired in quick succession. Millner did

2

not see the person who fired those three to five shots. She testified, however, that "Wayne" was the only person she saw holding a gun outside of the Brass Rail.

Miguel Michuca-Maciel exited the Brass Rail around 2:00 a.m. on November 11, 2010. He saw a "big group" of men arguing, and he heard two gunshots. Michuca-Maciel turned around, and he saw a man in a black pea coat holding a gun. Michuca-Maciel saw the man in the black pea coat point the gun "[a]gainst the group of people" and fire two shots. Michuca-Maciel ran away, and he heard a few more gunshots. Michuca-Maciel testified that he saw only one person with a gun on the night of the shooting. He also testified that he "did not get a good enough look" to identify the shooter.

A police officer showed Millner surveillance video from the Brass Rail. The video captured a man wearing a black pea coat. Millner stated that the man in the black pea coat was "Wayne," the person she had seen fire the gun into the air. Police made a still photograph of the video segment in which Millner identified "Wayne." A police officer showed that photograph to defendant's friend, Lanee Wright. Wright identified defendant. Wright testified that defendant used the name "Wayne." The phone number that "Wayne" used to call Millner on the night of the shooting was defendant's cell phone number.

At approximately 8:30 a.m. on November 12, 2010, police officers searched the home that defendant shared with his girlfriend, Veva Hardeman. Officers found a black pea coat, and Hardeman said it belonged to defendant. Officers also found a gun case in the home. During the search, defendant phoned Hardeman. Hardeman placed the call on speaker phone in order for the officers to hear defendant. Defendant said he was currently on a layover as part of a flight to Atlanta. Defendant asked Hardeman if the person that had been shot had died. Defendant mentioned a car he had left at the Brass Rail, and he told Hardeman to inform police that she had been driving the car.

3

Police officers found six bullet casings and four expended bullets at the scene of the crime. A criminalist testified that all four of the expended bullets were nominal .45 caliber and had been fired from the same gun. The criminalist testified that all six of the casings were .45 caliber and had been fired from the same gun.

Less than two hours after the shooting, at 3:40 a.m. on November 11, 2010, someone booked a one-way plane ticket for defendant to fly from San Francisco to Atlanta. The flight was scheduled to depart at 6:20 a.m. on November 12, 2010. Hardeman testified that she drove defendant to San Francisco International Airport around 5:00 a.m. on November 12, 2010. Police officers arrested defendant in Atlanta.

## DISCUSSION

### I. *INEFFECTIVE ASSISTANCE OF COUNSEL*

Defendant contends that the judgment must be reversed because his trial counsel rendered ineffective assistance in failing to impeach Shorter with a 2001 finding that Shorter was not guilty of battery by reason of insanity. Defendant emphasizes: "Had this evidence been presented, the jury would have had a significantly stronger basis to question Shorter's account of the altercation that preceded the shooting, and therefore to wonder whether it had been proven beyond a reasonable doubt that [defendant] was the shooter." As explained below, defendant has failed to establish ineffective assistance of counsel.

#### A. *Background*

During motions in limine, the prosecutor moved to exclude a 2001 finding that Shorter was not guilty of battery by reason of insanity. Defense counsel stated that he would not seek to admit the 2001 insanity finding. Defense counsel explained: "I don't think it's admissible. I don't have enough information about it to know if there was something that would make it admissible. In those kinds of cases, the end result, in terms

4

of incarceration in the state hospital may make it in some way inadmissible, but I don't have that information, so I wouldn't seek that."

## B. *Legal Principles*

The defendant bears the burden of proving ineffective assistance of counsel. (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.) "To prevail on an ineffective assistance of counsel claim, appellant must prove two elements: (1) trial counsel's deficient performance and (2) prejudice as a result of that performance." (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

Deficient performance is established "if the record demonstrates that counsel's performance fell below an objective standard of reasonableness under the prevailing norms of practice." (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) Prejudice is established if "there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*).) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra,* 466 U.S. at p. 694.)

The United States Supreme Court has explained: "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland, supra,* 466 U.S. at p. 697.)

A defendant who raises the issue on appeal must establish ineffective assistance "based upon the four corners of the record." (*Cunningham, supra,* 25 Cal.4th at 1003.) "A factual basis, not speculation, must be established before reversal of a judgment may be had on grounds of ineffective assistance of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 933 (*Williams*).)

5

**C.** *Trial Counsel Did Not Render Ineffective Assistance*

Defendant has failed to show that he was prejudiced by defense counsel's failure to impeach Shorter with the 2001 finding that Shorter was not guilty of battery by reason of insanity. The mental illness of a witness is relevant to the issue of credibility "if such illness affects the witness's ability to perceive, recall or describe the events in question." (*People v. Gurule* (2002) 28 Cal.4th 557, 592.) On the record before us, we cannot conclude that the jury would have discredited Shorter's testimony if it had learned of the 2001 insanity finding. The record is devoid of any connection between the 2001 insanity finding and Shorter's credibility as a witness: the record contains no facts regarding the mental condition that resulted in the insanity finding, nothing in the record suggests that Shorter was insane at the time of the 2010 shooting and thus unable to accurately perceive the shooting, and nothing in the record suggests that Shorter was insane at the time of the 2013 trial and therefore unable to accurately recall and describe the shooting. Indeed, the 2001 insanity finding established only that Shorter "was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong *at the time of the commission of the offense*." (Penal Code § 25, subd. (b), italics added.) The circumstance that Shorter suffered from some unknown mental condition before 2001 does not establish that his testimony regarding the 2010 shooting was unreliable and unworthy of belief. Defendant speculates when he asserts that the 2001 insanity finding showed that Shorter was delusional at the time of the 2010 shooting. Such speculation does not establish the requisite prejudice for a claim of ineffective assistance of counsel. (*Williams*, *supra*, 44 Cal.3d at p. 933.)

Moreover, even if we were to conclude that impeachment with the 2001 insanity finding would have caused the jury to discredit Shorter's testimony, defendant still could not establish prejudice. Other strong evidence proved that defendant shot Shorter: Michuca-Maciel testified that the person who shot Shorter was wearing a black pea coat,

6

surveillance video from the scene captured defendant wearing a black pea coat, Millner's testimony established that defendant was the person who fired the shot into the air, all of the shots were fired in quick succession, Michuca-Maciel and Millner both saw only one person with a gun, all of the expended bullets found at the scene were fired from one gun, all of the bullet casings found at the scene were fired from one gun, police found a black pea coat and a gun case at defendant's home, and defendant fled to Atlanta after the shooting. Given the foregoing evidence, Shorter's testimony was unnecessary to establish that defendant was the shooter. Thus, even if the jury had learned of the 2001 insanity finding and totally discredited Shorter's testimony, we do not believe that the jury would have concluded that defendant was not the shooter.

Accordingly, for the foregoing reasons, we must conclude that defendant would not have obtained a more favorable result if defense counsel had impeached Shorter with the 2001 insanity finding. Defendant has failed to establish ineffective assistance of counsel.

## II. *CRUEL AND UNUSUAL PUNISHMENT*

Defendant contends that his sentence of 30 years to life is grossly disproportionate to his culpability and thus constitutes cruel and unusual punishment.[1] As explained below, defendant's sentence is not cruel and unusual punishment.

### A. *Legal Principles and the Standard of Review*

The Eighth Amendment of the United States Constitution prohibits "cruel and unusual punishments." (U.S. Const., 8th Amend.) Likewise, the California Constitution

---

[1] The Attorney General asserts that defendant forfeited his claim by failing to adequately object to the sentence in the trial court. In response to the forfeiture argument, defendant asserts that his trial counsel rendered ineffective assistance in failing to object on the ground of cruel and unusual punishment. Because we can easily resolve defendant's claim on the merits, we will not address the issue of forfeiture and need not address the issue of ineffective assistance.

prohibits "[c]ruel or unusual punishment." (Cal. Const., art. I, § 17.) "Although articulated slightly differently, both standards prohibit punishment that is 'grossly disproportionate' to the crime or the individual culpability of the defendant." (*People v. Mendez* (2010) 188 Cal.App.4th 47, 64.) "Under both standards, the court examines the nature of the offense and the defendant, the punishment for more serious offenses within the jurisdiction, and the punishment for similar offenses in other jurisdictions." (*Ibid.*) "Any one of these three factors can be sufficient to demonstrate that a particular punishment is cruel and unusual." (*Id.* at pp. 64-65.)

"Successful challenges based on proportionality are extremely rare." (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) "The defendant must show the sentence is '"out of all proportion to the offense"' and that it offends 'fundamental notions of human dignity.'" (*Ibid.*) A defendant thus "has a 'considerable burden' to show a punishment is cruel and unusual." (*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092.)

Whether a sentence constitutes cruel and unusual punishment is a question of law. (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1474.) A reviewing court therefore applies the de novo standard of review when determining whether a defendant's sentence is cruel and unusual punishment. (*Ibid.*)

**B.** *Defendant's Sentence Does Not Constitute Cruel and Unusual Punishment*

The trial court sentenced defendant to five years in prison for the attempted murder conviction, it imposed a consecutive term of 25 years to life for the true finding that defendant personally and intentionally discharged a firearm causing great bodily injury, and it stayed the sentences for defendant's assault conviction and the remaining enhancements. We do not believe the total sentence of 30 years to life is grossly disproportionate to defendant's crime or his individual culpability.

The sentence here is not disproportionate to the offense or the offender. Defendant's crime was very serious. He fired multiple gunshots in a crowded parking

lot[2] with the intent to kill. Although defendant was unsuccessful in his attempt to kill, his conduct placed many people in danger of death and subjected Shorter to permanent injuries, including a limp and leg pain. Defendant understood the extreme danger inherent in his conduct, as demonstrated when he asked Hardeman whether the person he shot had died. (See *People v. Martinez* (1999) 76 Cal.App.4th 489, 494 [the defendant's state of mind should be considered when analyzing the nature of the offender].) In light of the foregoing circumstances, we do not believe the sentence of 30 years to life is disproportionate to the offense or the offender. Defendant's assertion that his culpability is diminished because he "is needed by his family" and has "no prior history of violent crime" is not persuasive. (See *id.* at p. 497 [the fact that a defendant has "no significant prior criminal record . . . is not determinative"].) The circumstances cited by defendant do not compel us to disregard his intentional, injurious, and extremely dangerous conduct and conclude that his sentence is disproportionate to his culpability.

Defendant has failed to show that his sentence is grossly disproportionate in comparison to sentences for more serious offenses within California. Defendant first asserts that his sentence is disproportionate because "the total sentence would be only 16 years to life" if he "had actually killed Shorter, but had simply used a knife to do so." (Italics omitted.) Defendant next asserts that "it is grossly disproportionate to punish the mere imposition of great bodily injury via a handgun with a 25-year-to-life term when the act of attempted murder itself carrie[s] only a five year term." Defendant's arguments are essentially an attack on the mandatory punishments for gun use codified in Penal Code section 12022.53. This court has previously rejected such an attack, explaining that the severe punishments for gun use mandated by Penal Code section 12022.53 are not disproportionate in comparison to the punishments for crimes committed with other

---

[2] Witnesses testified that approximately 20 to 50 people were present outside of the Brass Rail at the time of the shooting.

9

deadly weapons.  (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1215.)  This court explained that firearm use increases a defendant's culpability because a "firearm gives a perpetrator a strong advantage over the victim and effectively deters the victim's escape," a "firearm is particularly lethal to the victim of the underlying crime as well as others in the vicinity," and a "firearm allows the perpetrator to effortlessly and instantaneously execute an intent to kill once it is formed." (*Ibid*.)  This court concluded:  "A criminal's decision to discharge a gun to kill another person is certainly an appropriate factor in determining the length of punishment." (*Ibid.*)  Given that defendant here fired multiple gunshots in a crowded parking lot with the intent to kill, his sentence of 30 years to life is not disproportionate to his culpability.

Finally, we note that defendant makes no effort to compare his sentence to the punishments for similar offenses in other jurisdictions.  Defendant's failure to make such an argument constitutes a concession that his sentence withstands interjurisdictional scrutiny.  (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231.)

Accordingly, for the foregoing reasons, we conclude that the sentence of 30 years to life is not grossly disproportionate to defendant's crime or his individual culpability. We therefore hold that defendant's sentence does not constitute cruel and unusual punishment.

## DISPOSITION

The judgment is affirmed.

_____
RUSHING, P. J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.

*People v. Jones*
**H040590**

11