Filed 12/2/15  P. v. Jimenez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>TONY SALVADORE JIMENEZ, JR.,<br><br>    Defendant and Appellant. | C074048<br><br>(Super. Ct. No. 08F07560) |

A jury found defendant Tony Salvadore Jimenez, Jr., age sixteen, guilty of one count of discharging a firearm at an inhabited dwelling (Pen. Code, § 246; count one)[1] and two counts of assault with a semi-automatic firearm (§ 245, subd. (b); counts two [Michael Ramirez] & three [Walter Bivins].)  The jury also found true allegations that all of the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd.

---

[1]  Further undesignated statutory references are to the Penal Code.

(b)(1)), defendant was a principal in count one and during the commission of that offense a principal personally used and intentionally discharged a firearm, causing great bodily injury (§12022.53, subds. (b), (c), (d), (e)(1)), and defendant personally used a semi-automatic handgun in the commission of counts two and three (§ 12022.5, subd. (a)). The jury found not true a great bodily injury allegation in connection with count two (§ 12022.7, subd. (a)).

Defendant was sentenced to an aggregate term of 28 years to life in state prison, consisting of the low term of three years on count one, plus a mandatory 25 years to life for the firearm enhancement for count one, a concurrent six years on count two, plus four years for the gun enhancement for count two, and a concurrent six years on count three, plus four years for the gun enhancement on count three.[2] The trial court stayed defendant's sentence on the gang enhancement as to all counts.

Defendant appeals, contending his sentence constitutes cruel and unusual punishment under federal and state court precedent, specifically *Miller v. Alabama* (2012) 567 U.S. ___ [183 L.Ed.2d 407] (*Miller*), *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (*Graham*), and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), and is grossly disproportionate to his offenses. We shall conclude that defendant's sentence is not cruel and unusual under *Miller, Graham,* and *Caballero*

---

**2**   Defendant initially was sentenced to an indeterminate term of 40 years to life in state prison, consisting of 15 years to life on count one (§§ 246, 186.22, subd. (b)(4)(D)), and 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)). In an earlier appeal, we affirmed the judgment but vacated the sentence, finding the trial court erroneously imposed both a 15-year-to-life term for the gang enhancement and a 25-year-to-life term for the firearm enhancement on count one. (*People v. Jimenez* (Oct. 24, 2012, C065269) [nonpub. opn.].) This appeal arises from defendant's resentencing.

Defendant requests we take judicial notice of the reporter's and clerk's transcripts in *People v. Jimenez*, case No. C065269, as well as our prior nonpublished opinion in *People v. Jimenez* (Oct. 24, 2012, C065269). The Attorney General joins in the request. The request is granted. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

because he will be eligible for parole in his early 40's, and that his punishment fits the crimes and the criminal.  Accordingly, we shall affirm.

FACTUAL BACKGROUND[3]

On the night of July 15, 2007, defendant and several other young males arrived at a house party uninvited.  They identified themselves as "Diamonds" or "Norteños" and began harassing people at the door and otherwise tried to control the party.  When asked to leave, the young men, including defendant, fired guns at, toward, or in the vicinity of the house, while surrounded by innocent partygoers.  In addition, defendant pointed his gun at victim Bivins and tried to shoot, but the gun jammed.  Defendant also shot towards victim Ramirez, who was struck in the leg and suffered a through-and-through bullet wound.  At the time of the events at issue, defendant was 16 years old and a member of the Varrio Diamonds subset of the Norteño street gang.

In his sentencing brief, defendant, through his attorney, asked the court "to consider staying any life sentence altogether, and impose a reasonable determinate sentence" in light of "the recent series of cases (decided after [his] original sentencing) [(namely *Miller, Graham, & Caballero*)]," arguing that "[a]n unduly lengthy sentence imposed against a defendant who was 16 years old at the time of the crime (particularly a non-homicide offense), may be considered cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution."  Alternatively, defendant requested the court consider imposing an aggregate term of 28 years to life, consisting of the low term of three years on count one, plus a consecutive term of 25 years to life for the gun enhancement and stay his sentences on the remaining counts and enhancements.

After indicating that it had reviewed defendant's trial brief and various attachments thereto, the trial court sentenced defendant to an aggregate term of 28 years

---

[3]   Consistent with the parties, the facts are taken from our prior nonpublished opinion in *People v. Jimenez* (Oct. 24, 2012, C065269).

to life, consisting of the low term of three years on count one, plus a mandatory 25 years to life for the firearm enhancement for count one. The court imposed concurrent terms on counts two and three, and the gun enhancements appended thereto, and stayed defendant's sentence on the gang enhancement as to all counts. The court also awarded defendant 1,886 days of actual time and 282 days of good time, for a total of 2,168 days. The trial court acknowledged that the sentence it imposed was "harsh" but stated that "it obviously does not fall within the category of a cruel and unusual sentence." The court further observed that while defendant's trial counsel made "some very compelling points as to why [defendant] should be potentially released earlier than the date that I set," it noted that its "authority is somewhat restricted in terms of the mandatory sentencing laws."

DISCUSSION

Defendant first contends that his sentence constitutes cruel and unusual punishment under the *Miller-Graham-Caballero* line of precedent. We disagree.

In *Graham*, the United States Supreme Court banned outright life without parole sentences for juveniles convicted of nonhomicide offenses. (*Graham, supra*, 560 U.S. at p. 74.) As stated in *Graham*: "[D]efendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." (*Id.* at p. 69.) The court concluded that a juvenile convicted of a nonhomicide offense must be given "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Id.* at p. 75.)

In *Miller*, the United States Supreme Court held that mandatory terms of life without the possibility of parole (LWOP) are unconstitutional in the case of juveniles even in cases involving homicides. (567 U.S. ___ [183 L.Ed.2d at p. 424].)

In *Caballero*, the California Supreme Court held that the proscription in *Graham* against life without parole for nonhomicide offenses applied equally to sentences that were the functional equivalent of a life without parole sentence. (*Caballero, supra*, 55

4

Cal.4th at p. 268.) "Sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Ibid.*)

Here, according to the abstract of judgment, defendant was 22 years old at the time of (re)sentencing. He received a sentence of 28 years to life, with credit for 2,168 days; the credit equates to nearly 6 years. Thus, defendant will be eligible for parole when he is approximately 44 years old, calculated by deducting the 2,168 days of credit from a 28-year term. That is well within his natural life expectancy.[4] (See *People v. Perez* (2013) 214 Cal.App.4th 49, 58 [sentence of 30 years to life for a 16-year-old juvenile offender did not violate the Eighth Amendment where he would be eligible for parole when he reached the age of 47].)

Moreover, pursuant to section 3051, subdivision (b)(3), defendant will be eligible for parole during his 25th year of incarceration.[5] Section 3051, subdivision (b)(3) provides: "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or

---

[4] According to the Social Security Administration's Actuarial Life Table, available at <http://www.socialsecurity.gov/OACT/STATS/table4c6.html> (as of Nov. 23, 2015), at the time of sentencing defendant had a life expectancy of slightly over 77 years.

[5] The issue of whether section 3051, which includes provisions for a parole suitability hearing after a maximum of 25 years for most juvenile offenders serving life sentences, rendered moot any claim that such a sentence violates the Eighth Amendment is currently pending before the California Supreme Court. (See *In re Alatriste* (2013) 220 Cal.App.4th 1232, review granted Feb. 19, 2014, S214652 & S214960.) If not, the issue becomes whether section 3051 is unconstitutional pursuant to the Eighth Amendment. Defendant makes no such claim.

5

entitled to an earlier parole consideration hearing pursuant to other statutory provisions."
Assuming section 3051, subdivision (b)(3) remains in effect, defendant will be eligible
for parole when he is approximately 41 years of age, calculated by deducting 2,168 days
from a 25-year term.

Under either scenario, defendant will be eligible for parole well within his natural
life expectancy. Accordingly, his sentence does not constitute cruel and unusual
punishment under the *Miller-Graham-Caballero* line of cases.

Defendant next contends that his sentence of 28 years to life is " 'grossly
disproportionate' " to his crimes. Again, we disagree.

"The California Constitution's prohibition of cruel or unusual punishment . . .
prohibits imposing a criminal sentence which is 'so disproportionate to the crime for
which it is inflicted that it shocks the conscience and offends fundamental notions of
human dignity.' [Citations.]" (*People v. Johnson* (2010) 183 Cal.App.4th 253, 296
(*Johnson*); see *In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*); *People v. Dillon* (1983) 34
Cal.3d 441, 478; Cal. Const., art. I, § 17.) Under California law, a defendant "must
demonstrate his punishment is disproportionate in light of (1) the nature of the offense
and the defendant's background, (2) the punishment for more serious offenses, or (3)
punishment for similar offenses in other jurisdictions." (*In re Nuñez* (2009) 173
Cal.App.4th 709, 725 (*Nuñez*).) We consider the totality of the circumstances
surrounding the commission of the offenses in undertaking this three-pronged analysis.
(*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092.) The defendant "need not
establish all three factors – one may be sufficient [citation], but the [defendant]
nevertheless must overcome a 'considerable burden' to show the sentence is
disproportionate to his level of culpability [citation]. As a result, '[f]indings of
disproportionality have occurred with exquisite rarity in the case law.'" (*Nuñez, supra,*
173 Cal.App.4th at p. 725.)

6

Our inquiry "commences with great deference to the Legislature. Fixing the penalty for crimes is the province of the Legislature, which is in the best position to evaluate the gravity of different crimes and to make judgments among different penological approaches. [Citations.] Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive. [Citations.]" (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.) "The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*Lynch, supra,* 8 Cal.3d at pp. 423-424.)

Defendant was sentenced to the low term of three years for discharging a weapon at an inhabited dwelling, and his sentence was enhanced with a mandatory consecutive term of 25 years to life pursuant to section 12022.53, subdivisions (d) and (e)(1) based on the jury's findings that a principal in the commission of the offense personally and intentionally discharged a firearm and proximately caused great bodily injury to a person other than an accomplice, and the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).[6] Defendant's sentences on the remaining counts and enhancements were either run concurrent to his sentence on count one or stayed.

---

[6] Section 12022.53, subdivision (d) provides in pertinent part: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in . . . Section 246, . . . personally and intentionally discharges a firearm and proximately causes great bodily injury . . . to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

Defendant does not contend that his 28 years to life sentence is disproportionate to the punishment for more serious offenses, or the punishment for similar offenses in other jurisdictions.[7] Instead, he limits his argument to the first factor, which requires "an examination of 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.'" (*Dillon, supra,* 34 Cal.3d at p. 479, quoting *Lynch, supra,* 8 Cal.3d at pp. 425.)

When examining the nature of the offense, we "consider not only the offense in the abstract -- i.e., as defined by the Legislature -- but also 'the facts of the crime in question' [citation] -- i.e., the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was

---

Section 12022.53, subdivision (e) (1) further provides that "[t]he enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of Section 186.22. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)."

[7] In conjunction with his earlier argument, defendant asserts that the sentence is disproportionate because under section 1170, subdivision (d)(2), juveniles serving an LWOP sentence are eligible to petition for recall of the sentence after serving 15 years of the life sentence, while someone like him, who is serving an indeterminate non-LWOP sentence "has no such recourse to the courts to petition for recall of his sentence until expiration of the 30-year term." Defendant claims that as a result "that sector of the juvenile population that has committed offenses serious enough to result in LWOP terms is afforded more favorable prospects for discretionary reduction of their sentences to take into account their youth than juveniles with lengthy, albeit not LWOP, indeterminate terms." As a practical matter, even if defendant were permitted to petition for recall of his sentence after 15 years, the court would not have any discretion to reduce it insofar as he received the shortest possible term allowed under the applicable law (the low term of three years on count one and a mandatory consecutive 25 years to life for the gun enhancement). Moreover, unlike "that sector of the juvenile population that has committed offenses serious enough to result in LWOP," defendant is eligible for *release* on parole during his 25th year of incarceration under section 3051, subdivision (b)(3). That defendant may not petition for recall of his sentence after 15 years pursuant to section 1170, subdivision (d)(2) does not make his sentence disproportionate to those who commit more serious offenses as defendant appears to suggest.

8

committed, the extent of the defendant's involvement, and the consequences of his acts." (*Dillon, supra,* 34 Cal.3d at p. 479.) Our inquiry into the nature of the offender "focuses on the particular person before the court, and asks whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)

As defendant concedes, "the crime of which he was convicted was a serious one, with the potential for injury." In mitigation, he notes that "no one was killed," "the jury specifically found that [he] had not personally inflicted great bodily injury on anyone," and "the jury never found that he was personally culpable for discharging a firearm at an inhabited dwelling." What defendant fails to mention, however, is that the crime of which he was convicted involved defendant and fellow gang members brandishing and discharging firearms in very close proximity to innocent partygoers after being asked to leave a party to which they had not been invited. While the jury found that defendant did not personally inflict great bodily injury on anyone, he participated in the events that resulted in an innocent partygoer receiving a through-and-through bullet wound to his leg. Moreover, while the jury did not find that defendant was personally culpable for discharging a firearm at an inhabited dwelling, his participation was not passive. The jury found him guilty of two counts of assault with a firearm and found true allegations he personally used a semiautomatic handgun in the commission of those offenses. Defendant's conduct demonstrated a reckless disregard for the lives of the innocent partygoers. That "no one was killed" or that more people were not injured during the incident was dumb luck.

Turning to the nature of the offender, while defendant was 16 years old and had no criminal record at the time he committed the crimes at issue, he had a history of gang affiliation. Defendant's claim that he only "began associating with other youths who exerted a negative influence on him" after the death of his father in June 2006 is belied by his admission that he had been a gang member since 2005. Moreover, there is no

9

evidence that his status as a "'special ed'" student contributed to his participation in the crimes at issue.

This is not a case where defendant's personal background or role in the commission of the crimes makes a sentence of 28 years to life grossly disproportionate to his crimes. To the contrary, considering the callousness of his actions, the danger to society presented by discharging a gun in close proximity to numerous innocent partygoers, and his gang affiliation, we conclude that defendant's 28-year-to-life sentence is not grossly disproportionate to his crimes. (See *People v. Em* (2009) 171 Cal.App.4th 964, 966-967, 972-973 [sentence of 50 years to life imposed on 15-year-old aider and abettor to murder was not disproportionate considering seriousness of crime and defendant's gang affiliation and danger to society].)

Defendant argues this case is like *Dillon, supra,* 34 Cal.3d 441, in which our Supreme Court concluded that a 17-year-old convicted of felony murder should have his punishment reduced to the applicable sentence for second degree murder based on principles of proportionality under the California Constitution. (*Id.* at p. 489.) The court reasoned that that the defendant was "an unusually immature youth" (*id*. at p. 488) who shot the victim in a panic during an unsophisticated attempt to steal from a marijuana farm. (*Id.* at p. 452.) "He had had no prior trouble with the law, and . . . was not the prototype of a hardened criminal who poses a grave threat to society. . . . [W]ith hindsight his response might appear unreasonable; but there is ample evidence that because of his immaturity he neither foresaw the risk he was creating nor was able to extricate himself without panicking when that risk seemed to eventuate." (*Id.* at p. 488.)

Unlike the defendant in *Dillon*, there is no evidence defendant was unusually immature for his age. Defendant was not in a panic when he discharged his gun. Nor was he acting in response to a perceived threat. Rather, he showed up to a party uninvited with several other gang members and when asked to leave responded by discharging his gun in close proximity to innocent partygoers.

Although not raised by the parties, we note that the abstract of judgment fails to list the 3 year term imposed on count one and erroneously indicates defendant's sentence for the gun enhancement imposed on count three as 3 years, when the trial court imposed 4 years. We shall direct the trial court to correct these clerical errors.

DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect that defendant was sentenced to 3 years on count one and 4 years for the section 12022.5, subdivision (a) enhancement imposed on count three, and to forward a copy of the corrected abstract to the Department of Corrections and Rehabilitation.

          /s/
          Blease, J.

We concur:

     /s/
     Raye, P. J.


     /s/
     Duarte, J.

11