Filed 9/30/21  P. v. Juarez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN MANUEL JUAREZ,<br><br>    Defendant and Appellant. | A160184<br><br>(Contra Costa County<br>Super. Ct. No. 05-170396-6) |

A jury found defendant Juan Manuel Juarez guilty of 17 counts of sexual offenses involving his stepdaughters.  The trial court sentenced defendant to 28 years to life in prison.  On appeal, defendant's sole argument is that his sentence is grossly disproportionate to his crimes in violation of the state and federal Constitutions.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with 17 sexual offenses arising from the molestation of his two stepdaughters over a period of about two years and 10 months.  More specifically, the information charged defendant with 11 counts of lewd acts on his eldest stepdaughter, Jane Doe 1 (Doe 1), when she was under the age of 14 (Pen Code, § 288, subd. (a))[1] (288(a)) for counts 1 through 11, and one count of lewd acts when she was 14 years old (§ 288, subd. (c)(1))

---

[1]    All further statutory references are to the Penal Code.

1

(288(c)) regarding count 12.  The charged crimes spanned from when Doe 1 was 11 to 14 years old.  The information also charged defendant with five counts of lewd acts on his younger stepdaughter, Jane Doe 2 (Doe 2), when she was under the age of 14 (§ 288(a) counts 13 through 17).  The charged crimes spanned from when Doe 2 was nine to eleven years old.  Aside from count 12, the People further alleged as to each count that defendant committed the crimes against more than one victim.  (§ 667.61, subd. (j)(2).)[2]

A jury convicted defendant of all counts and found all the multiple-victim allegations true.  The People filed a sentencing brief, indicating each of the section 288(a) counts carried a mandatory term of 25 to life by virtue of the "One Strike" law.  The People requested that the court impose a 25 to life term for count 1, consecutive sentences for three more section 288(a) counts, and then concurrent sentences for the remaining counts, for a total term of 100 years to life.[3]

Defendant filed a sentencing memorandum, arguing a potential life sentence would be disproportionate to the underlying conduct and would amount to cruel and unusual punishment.  Defendant claimed, among other things, that the case involved no force, fear, or aggravated conduct such as penetration; he had no prior criminal history; and he expressed remorse.  The People filed a brief in opposition.  The trial court ultimately rejected defendant's arguments.

In doing so, the trial court distinguished between the circumstances of defendant's case and those of a now-depublished case that defendant relied

---

[2]     As relevant here, section 667.61, subdivision (j)(2), mandates a term of 25 years to life when a defendant is convicted of lewd or lascivious acts on a child who is under the age of 14 in violation of section 288(a) against more than one victim.  (§ 667.61, subds. (c)(8), (e)(4), (j)(2).)

[3]     The probation department also recommended consecutive sentencing.

on, *People v. Cadena* (2019) 39 Cal.App.5th 176.[4] Suffice it to say, based on its observations during trial, the court determined that defendant had inflicted significant psychological harm on both victims; the abuse inflicted was chronic and its severity increased over time; and defendant acted violently at home, creating an atmosphere of coercion and duress. In the court's view, this was a "classic" case of "grooming" victims for the commission of greater offenses.

That said, the trial court declined to follow the People's sentencing recommendation, indicating that a 100 year to life sentence would be disproportionate in this particular case. Instead, the court sentenced defendant to a total of 28 years to life in prison. Specifically, the court imposed a three-year term for the section 288, subdivision (c) count, and a 25 year to life term for count 1. The court also imposed 25 year to life terms for the remaining section 288(a) counts, but ran all of these terms concurrent to count 1. The following is a brief summary of some of the trial evidence.

Doe 1 testified that defendant began living with her mother, herself, and her younger sister, Doe 2, the summer before she started the sixth grade, when she was 11 years old. From that time, to shortly after she turned 14 years old, defendant sexually molested her in various ways. Specifically, starting when she was 11 years old, he touched, massaged, sucked on, and licked her breasts. Sometimes when he did this, defendant made comments about her physical development, telling her it would help her breasts grow and it was good for her. Around the time Doe 1 was in the seventh and eighth grades, defendant also kissed her with his tongue; patted, spanked

---

[4]     The California Supreme Court ordered *Cadena* not to be published. (Dec. 11, 2019, S258791.)

and groped her buttocks; and would grind against her buttocks while she was clothed, with an erection.

Additionally, before and after Doe 1 turned 14, he touched her "vagina" or the area around it with his fingers, over and under her clothing.[5] The first time he touched her vagina, he told her to be quiet, and then pressed down and moved his fingers in circles while sucking on her chest. Another time he touched her vagina, when he put his hands under her underwear, he sucked on his fingers before and after. Additionally, once while Doe 1 was in the seventh or eighth grade, defendant made her get on her knees, then he got behind her and rubbed his erect penis between her thighs.

Doe 1 testified defendant touched her vagina or genital area about five different times, and he rubbed his penis between her thighs once. The other acts of molestation, however, happened regularly and frequently. For example, Doe 1 testified defendant massaged her breasts every day, at least once. He patted her buttocks, kissed her with his tongue, and would grind against her buttocks multiple times a week.

Doe 1 testified she tried to get defendant to stop his abuse. For example, when he first touched her chest, she tried to push his hand away or tell him to stop, but he would just put his hand back. After he first kissed her with his tongue, she said it was "gross" and asked him to stop, but he just said, "it's fine." Once, while he was touching her vagina, she scratched his hand because she was "freaking out." This got defendant "really mad," and he hissed and cursed at her. Because of his reaction, Doe 1 never did it

_____

[5] During trial, the prosecutor and both victims used the term "vagina," apparently to refer to external genitalia. We will use that term here because it was used during trial, and we acknowledge that term is commonly used to refer to female genitalia as a whole, but note that there are other more accurate terms to refer to various parts of external female genitalia.

4

again. She testified more generally that after each new type of molestation, she would try for days to weeks to make him stop, but would eventually give up.

When asked whether there was a specific reason she did not say anything about the molestation, Doe 1 responded that defendant was violent: he would swat at her sister's head, punch and kick holes in the walls, and get angry when he did not get what he wanted. If she refused to get dressed in front of him or pushed him away too harshly, "the house would suffer. He would be angrier and more harsh and he would be impatient and he would yell." If she "outright" refused him or pushed him away in a manner he thought was "mean," then he would get "really aggressive" and fight with her mom a lot or sometimes fight with her sister. She testified she disclosed the molestation to her mother once, but her mother essentially pressured her to allow defendant to continue because he was paying the family's bills, saying she would kill herself if Doe 1 or Doe 2 were taken from her. Thereafter, Doe 1 never wanted to bring it up again. She became severely depressed, believing nobody cared about what she had to say.

Doe 2 testified that almost every day, starting around the time she was nine years old, defendant would have her sit on his lap and would touch her breasts under her clothes. She pushed him away when he did this, or told him no. Defendant once made her lift up her shirt to "check the size of [her] breasts," then touched her breasts. Also, he would yell out to her, "Let me bite your butt." Doe 2 would say "no," but he actually did bite her buttocks, allegedly as a punishment. Sometimes he bit her buttocks over her clothing, but sometimes he made her take off her pants and bit her skin. This biting happened a little more than five times with clothing, and a little more than five times without, and it started around the time she was in the fourth

5

grade. Sometimes the biting hurt, and Doe 2 would get mad and ask defendant to stop.

Doe 2 also testified that defendant would put his hand in her pants fairly often, just above her vagina. Around her fourth grade year, he would also slap her buttocks. She testified he did this mostly as punishment, but also testified he did it nearly every day in a playful or joking way when she walked around the house.

Doe 2 testified defendant punched or kicked holes in the walls when angry, and they had many picture frames in the house to cover up the holes. She described a "massive" hole in his and her mother's bedroom that they covered with cardboard. She witnessed defendant making these holes and was afraid of him. Defendant also punished her and her sister by hitting them on top of the head with a closed fist.[6]

Defendant's interview with the police was admitted into evidence. During that interview, defendant initially denied any misconduct, but eventually admitted some of the molestation and expressed remorse.

**DISCUSSION**

Defendant argues his indeterminate sentence is grossly disproportionate to his crimes and so constitutes cruel and unusual punishment in violation of article I, section 17, of the California Constitution and the Eighth Amendment of the United States Constitution. We review these claims de novo. (*People v. Wilson* (2020) 56 Cal.App.5th 128, 166–167.)

**A. California Constitution**

Article I, section 17, of the California Constitution proscribes "[c]ruel or unusual punishment." A sentence violates this proscription if "it is so

---

[6] We acknowledge Doe 1 testified she did not recall defendant hitting her.

disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) Courts employ three "techniques" to determine if a punishment is cruel or unusual: first, courts examine "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; second, courts compare the punishment with the punishments prescribed for more serious crimes in the jurisdiction; and third, courts compare the punishment with punishments for the same offense in other jurisdictions. (*Id.* at pp. 425–427.) "The weight afforded to each prong may vary by case. [Citation.] 'Disproportionality need not be established in all three areas.'" (*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*).) A defendant must overcome a "considerable burden" to show the sentence is disproportionate (*People v. Wingo* (1975) 14 Cal.3d 169, 174), and "[o]nly in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.)

### 1. Nature of the Offense and Offender

In evaluating the nature of the offense, we consider "the seriousness of the offense and the presence of violence, victims, or aggravating circumstances. [Citations.] We consider not only the offense in the abstract but also the facts of the crime in question—'i.e., the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts.' [Citations.] We also evaluate whether the punishment fits the criminal. [Citations.] We examine the defendant 'in the concrete rather than the abstract . . . focus[ing] on the particular person before the court, [and asking] whether the

7

punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.'" (*Baker*, *supra*, 20 Cal.App.5th at p. 724, italics omitted, second bracketed insertion added.)

Viewed cumulatively, the offenses here were grave and significantly serious. Lewd conduct on a child is an offense whose "seriousness is considerable," and one which "may have lifelong consequences to the well-being of the child." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806 (*Christensen*).) Here, defendant began sexually abusing his stepdaughters when they were young and vulnerable (*People v. Olsen* (1984) 36 Cal.3d 638, 646–647 [in enacting section 288, the Legislature "recognized that persons under 14 years of age are in need of special protection"]), and while he was in a position of trust as a father figure.[7] (*Baker*, *supra*, 20 Cal.App.5th at p. 725.) Far from being an isolated event, for nearly three years defendant's sexual abuse was a regular part of life for these children.

Moreover, defendant was able to accomplish some if not most of the molestation because he created and perpetuated a household environment clouded by fear. As recounted earlier, both victims testified about defendant's anger, his punching or kicking holes in the walls, and what they perceived to be his mistreatment of their mother. Doe 2 testified she was afraid of defendant. Doe 1 testified that defendant "got very angry whenever anything didn't go his way" and that he would get impatient and yell and the "house would suffer" when she "pushed him away too harshly." Doe 1 testified she did not say anything about the molestation because she thought

---

[7]   On this point, we note Doe 2's testimony that she had complicated feelings about defendant, because she had already been through the divorce of her mother and biological father, and she "wanted to be in a home with a father and a mother" and wanted defendant "not to leave."

defendant would hurt her family. During sentencing, the trial court observed the victims lived in a home tainted by "coercion and a form of duress." Related to the foregoing, the evidence recounted earlier also showed that defendant ignored Doe 1's repeated manifestations of her non-consent.

These crimes had a profound impact on the victims. When discussing some of the reasons underlying its sentencing decision, the trial court expressed that, having observed both victims testify, it could plainly see that defendant inflicted significant psychological harm on both of them. Doe 1 herself testified that while the abuse was ongoing she "became severely depressed" and felt "trapped" because "nobody cared what [she] had to say about [the molestation]." At the sentencing hearing both victims also made impact statements, which are not repeated here but which further show the prolonged suffering the crimes caused and their impact on the victims. This harm to the victims and their childhood will almost certainly impact their lives going forward. (See *People v. Meeks* (2004) 123 Cal.App.4th 695, 709 ["Sexual offenses not only invade the deepest privacies of a human being, and thereby may cause permanent emotional scarring, but they frequently result in serious physical harm to, or death of, the victim"].)

Defendant acknowledges much of the foregoing, but he contends his crimes were less serious than those in other cases upholding life sentences, namely *Baker*, *supra*, 20 Cal.App.5th 711, *Christensen*, *supra*, 229 Cal.App.4th 781, and *People v. Meneses* (2011) 193 Cal.App.4th 1087 (*Meneses*). Defendant argues that unlike the defendants in those cases, he did not commit oral copulation, sexual intercourse, or digital penetration. He also argues the victims in *Baker* and *Christensen* were several years younger than Doe 1 and Doe 2.

9

Additionally, defendant likens his case to *In re Rodriguez* (1975) 14 Cal.3d 639 (*Rodriguez*), which involved a defendant who pled guilty to violating section 288 after he picked up a six year old who was roller skating and fondled her private parts; the defendant was found parked with his trousers unzipped and the child's skirt raised above her knees. (*Rodriguez*, at p. 643 & fn. 5.) The *Rodriguez* court concluded the defendant's 22-year term was unconstitutional as applied because the crime "involved no violence and caused no physical harm to the victim," the incident lasted only a few minutes, defendant utilized no weapon, and he did not attempt any of the "dangerous offenses sometimes associated with violations of section 288." (*Id.* at pp. 654–655.) Additionally, the defendant had a low IQ, was functionally illiterate and unskilled, and experienced frustrations "brought on by intellectual and sexual inadequacy, and his inability to cope with these problems." (*Id.* at p. 644, fn. 6, 655.)

We reject defendant's arguments. The offenses at issue in *Baker*, *Christensen*, and *Meneses* involved singular or otherwise isolated incidents during which sexual abuse took place. While defendant's conduct may have been, in some sense, less egregious than some of the offenses at issue in those cases, the fact remains that defendant repeatedly molested his two victims over a prolonged period of time, using anger, duress, and violence to get his way with them. His actions were egregious in their own right, and were significantly more aggravated than the conduct in *Rodriguez*. As a point of further distinction with *Rodriguez*, defendant's apparent claim that his IQ or intelligence is comparable to the defendant in *Rodriguez* lacks meaningful support in the record. Indeed, as the trial court observed, the molestation here slowly progressed from less serious to more serious acts, and defendant appeared to be "grooming" the victims for more serious acts. On this record,

we cannot agree with defendant's seeming suggestion that his intellectual functioning as a perpetrator warrants the same consideration as that afforded the defendant in *Rodriquez*.

Defendant further argues that his sentence is unconstitutionally excessive because (1) he has no criminal record and no substance abuse history; (2) he expressed remorse; (3) his STATIC-99R score of zero indicates he has a below-average risk of committing another sex offense[8]; and (4) a psychological evaluation he submitted to the court indicates it is "highly unlikely" he would commit another sex offense. While these considerations are favorable to defendant, they are substantially outweighed by all the other factors identified above. (*Baker*, *supra*, 20 Cal.App.5th at p. 725.) On the whole, we conclude there is no disproportionality based on the nature of defendant or his offenses.

### 2. *Comparison of Punishment for Other Crimes in California*

In comparing the challenged punishment with punishments prescribed for more serious crimes, we bear in mind that " '[p]unishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime. Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual.' " (*Baker*, *supra*, 20 Cal.App.5th at p. 727.)

Defendant argues his One Strike life term is excessive because there are more serious sex crimes that are not subject to the One Strike law. Specifically, defendant points to the following crimes carrying a term of three, six, or eight years: (1) rape where the victim is incapable of resisting because they are unconscious or intoxicated (§§ 261, subds. (a)(3), (a)(4), 264,

---

[8] The STATIC-99R is "an actuarial measure of risk for sexual offense recidivism." (Capitalization omitted.)

subd. (a)); (2) spousal rape where the victim is incapacitated due to being unconscious or intoxicated (§ 262, subds. (a)(2), (a)(3); (3) sodomy where the victim is unconscious or incapable of consent due to a mental disorder or disability (§ 286, subds. (f), (g); (4) sexual penetration or sodomy with a child under 14 years and more than 10 years younger than the perpetrator (§§ 286, subd. (c)(1), 289, subd. (j)); and (5) pimping or pandering a child under the age of 16 years old for prostitution (§§ 266h, subd. (b)(2), 266i, subd. (b)(2)). He also notes that procurement for purpose of prostitution by force or fraud (§ 266a, 18, subd. (a)) carries a term of 16 months, two years, or three years.[9]

First of all, defendant's reliance on crimes not specifically directed at child victims renders his comparisons inapt. "It is well within the prerogative of the Legislature to determine that sex offenses against young children are deserving of longer sentences than sex offenses against adults or nonsex offenses." (*People v. Gomez* (2018) 30 Cal.App.5th 493, 502.) Of course, many of the foregoing crimes—i.e., rape, sodomy, sexual penetration—if committed against a child under 14 are generally also violations of section 288(a) that expose a defendant who commits multiple such acts against more than one victim to sentencing under the One Strike law. (See *Meneses*, *supra*, 193 Cal.App.4th at p. 1093.)

Further, defendant points to these crimes without addressing that the sentences they carry are for *singular* violations. Here, defendant's sentence was not for a single lewd act on one victim, but for multiple lewd acts against two victims. " 'The penalties for single offenses . . . cannot properly be compared to those for multiple offenses.' " (*Christensen*, *supra*, 229 Cal.App.4th at p. 808.)

---

[9] Procurement of a child in violation of section 266j carries a term of three, six, or eight years.

Additionally, defendant's reliance on the crimes of pimping or pandering a child under the age of 16 years old for prostitution (§§ 266h, subd. (b)(2), 266i, subd. (b)(2)) does not assist his position. Section 236.1, subdivision (c), provides that any person who "causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j . . . is guilty of human trafficking." A *single* violation of this statute is subject to punishment by 5, 8, or 12 years, or an indeterminate term of 15 years to life when that violation involves "force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person." (§ 236.1, subds. (c)(1), (c)(2).) This significantly increases a defendant's potential exposure for pimping and pandering children, including the potential for a life term for a single count.

Ultimately, defendant's argument regarding other crimes in California fails to convince us that the instant case "is that 'rarest of cases' in which 'the length of a sentence mandated by the Legislature is unconstitutionally excessive.' " (*Baker*, *supra*, 20 Cal.App.5th at p. 730.)

### 3. Comparison of Punishment for Analogous Crimes in Other States

Finally, defendant's comparison of his sentence to sentences in other states is likewise unavailing. Defendant starts by acknowledging that some states—such as Idaho and Florida—permit a life sentence for a single conviction for lewd and lascivious conduct. (Idaho Code, § 18-1508; Fla. Stat., §§ 800.04, subd. (5)(b), 775.082, subd. (3)(a)4.) He also acknowledges a Utah statute that permits a life term for aggravated sexual abuse of a child, such as when the perpetrator occupies a special position of trust. (Utah Code Ann., § 76-5-404.1, subds. (4)(h), (5).) He proceeds to contend, however, that

13

only California "has a mandatory enhancement elevating a determinate term to a life sentence based on there being multiple victims."

The fact that California has a punishment scheme to address offenders who target more than one child victim does not compel the conclusion that it is unconstitutionally cruel or unusual. (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.) The state constitutional proscription against cruel or unusual punishment "does not require California to march in lockstep with other states in fashioning a penal code. It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.' " (*Ibid.*) Only "when there appears a significant disproportion between a challenged penalty and that imposed for the same crime by our sister states" should the penalty be deemed suspect. (*People v. Wingo*, *supra*, 14 Cal.3d at p. 179.) Defendant has not satisfied his burden of showing that his sentence under the One Strike law is excessive in comparison to the same offense in other jurisdictions.

In sum, we reject defendant's contentions that his sentence constitutes cruel or unusual punishment in violation of the California Constitution.

## B. Federal Constitution

As for the federal Constitution, "the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.' " (*Graham v. Florida* (2010) 560 U.S. 48, 59–60.) To decide whether a sentence is grossly disproportionate to the crime, a court must "begin by comparing the gravity of the offense and the severity of the sentence. [Citation.] '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences

14

received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." (*Id.* at p. 60.) Defendant's only arguments as to his Eighth Amendment claim are the same ones we have already rejected concerning the California Constitution. For the reasons set forth in our analysis above, we reject defendant's challenge under the Eighth Amendment.

**DISPOSITION**

The judgment is affirmed.

_____

Fujisaki, Acting P. J.

WE CONCUR:


_____

Petrou, J.


_____

Chou, J.*

A160184/*People v. Juarez*

_____

* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.